CLARA POWELL, et al., Appellants, vs. MARY A. WELD, Exrx., Appellee.

*Opinion filed September 21, 1951—Rehearing denied Nov. 19, 1951.*

SHELBY E. HOOD, and RAPHAEL E. YALDEN, both of Rockford, for appellants.

WILLIAMS, McCARTHY & KINLEY, of Rockford, (KARL C. WILLIAMS, and JOHN C. McCARTHY, of counsel,) for appellee.

Mr. JUSTICE MAXWELL delivered the opinion of the court:

This is an action brought in the circuit court of Winnebago County by the heirs-at-law of Grace M. Weld, deceased, contesting the will of said deceased. The defendant, Mary A. Weld, is sole beneficiary under the will and is made a party defendant as executrix of the will as well as in her individual capacity.

The complaint contained two counts. The first alleged that testatrix was of unsound mind at the time of execution of the will and the second alleged that a fiduciary relationship existed between testatrix and Mary A. Weld and charged undue influence on the part of the defendant.

The cause was heard by a jury which found that said instrument was the last will and testament of Grace M. Weld. Appellants' motion for new trial was overruled and a decree was entered on the verdict. A freehold being involved, appeal was taken directly to this court.

Grace M. Weld died July 19, 1949, leaving appellants, her cousins, her only heirs-at-law. Some twenty-five years before her death Grace Weld married Fred Weld and they

lived together as husband and wife until March 7, 1949, when Fred Weld was taken to a hospital, where he died on March 17, 1949. Mary A. Weld, the defendant, is a sister of Fred Weld. She visited and associated closely with Fred and Grace Weld during their married life, and after the death of Fred Weld she continued as a close friend and companion of Grace Weld. Grace Weld was about 70 years of age and shortly after her husband's hospitalization, upon recommendation of her physician, she was sent to Wilgus Sanitarium in Rockford, for rest and care. She remained there until April 13, 1949, when she was discharged. While she was at Wilgus Sanitarium her condition was diagnosed as simple melancholia or simple depression. It appears that she was much concerned over the condition of her husband, and after his death she was quite depressed and melancholy.

During her stay at Wilgus Sanitarium, testatrix was out repeatedly on trips and excursions with Mary Weld. Some days she was away all day. On one such occasion they were talking with a neighbor, Brainerd Trigg, about Fred's death and Grace Weld brought up the subject of wills, stating that she did not have one but wanted one. Trigg advised her to consult an attorney. Grace asked Trigg to suggest an attorney. Several were mentioned, including William E. Collins. Shortly thereafter, on or about March 23, Collins received a telephone call and engaged in a conversation with both Grace and Mary Weld. Grace Weld advised him that she wanted Mary Weld to act as administratrix of her late husband's estate and also that she wanted him to prepare a will for her leaving everything to Mary Weld. On that occasion Mary Weld did not talk to Collins about Grace Weld's will, but their conversation was about what papers had to be signed in Fred's estate. Arrangements were made then for Collins to meet Grace and Mary at Mary's home on Sunday, March 27.

Collins prepared the necessary petition and other papers to have Mary appointed administratrix of Fred's estate and also the will for Grace Weld. On March 27 he went to the home of Mary Weld, and the will in question was properly executed.

The plaintiffs rely for reversal upon rulings of the trial court in permitting plaintiffs' witnesses to answer certain questions on cross-examination and in refusing to give one of plaintiffs' instructions.

Three of the questions asked plaintiffs' witnesses on cross-examination touching upon testatrix's mental capacity and which they were permitted to answer over plaintiffs' objection were in substance as follows:

"Did she have the capacity to know what her property was or consisted of?"

"Did she have the capacity to know who the natural objects of her bounty were?"

"Did she have the capacity to know who her relatives were?"

Plaintiffs objected to these questions on the ground that they called for conclusions of the witness, usurped the functions of the jury and that to permit them to be asked and answered on cross-examination was prejudicial error.

The problem involved in a jury's determination of soundness or unsoundness of mind is well stated in *Speirer* v. *Curtis,* 312 Ill. 152, where it was pointed out that the phrase "sound mind and memory," when applied as a test to determine testamentary capacity, does not mean absolute soundness and mental capacity but means that degree of mental power and vigor which a testator should possess in order to be able to dispose of his property by will. Opinions of witnesses as to sound mind and memory, ability to transact ordinary business, ability to know relatives, ability to know the nature and extent of property, and the like, are all conclusions of fact which are admissible to

enable the jury, under proper instructions as to sound mind and memory, to determine whether the testator had mental capacity to execute his will.

The questions objected to by plaintiffs were asked of six witnesses. Three of these, namely, Dr. August Magnelia, Dr. Carl Hamann and Dr. Egbert W. Fell testified on direct examination as expert witnesses and either stated directly that they were of the opinion that testatrix was of unsound mind or that they had diagnosed her condition as a mental condition called melancholia or depression. The other three were lay witnesses. Two of these, namely, John Gilroy and Marian Nell, had testified on direct examination that they were of the opinion that testatrix was of unsound mind. Elsie Waggoner, the other lay witness, answered the questions on cross-examination favorably to the plaintiffs and her answers therefore could not have been prejudicial to plaintiffs.

The questions asked in this case are not essentially different from those approved by this court in the case of *Voodry* v. *Trustees of University of Illinois,* 251 Ill. 48, wherein we held that it was not error to permit witnesses on cross-examination to give their opinions as to whether or not testatrix "had mind enough to know what property she had, or who her relatives were." As there pointed out, it is from the testimony of witnesses who gave their opinion that testatrix was or was not of unsound mind and that she did or did not have the capacity to know what her property was or consisted of, and who her relatives, the natural objects of her bounty, were, that the jury was able to determine whether or not she was of sufficient mentality to execute a last will and testament.

It is well settled that, after laying proper foundation, a witness may give an opinion as to soundness or unsoundness of mind of the testator. (*Hunt* v. *Vermilion County Children's Home,* 381 Ill. 29.) Plaintiffs' witnesses gave such opinions upon direct examination, and it was upon

cross-examination of these witnesses that the foregoing questions were asked. Where witnesses have expressed opinions as to soundness or unsoundness of mind of the testator, questions similar to those propounded by defendant herein are proper on cross-examination.

In the case of *Baddeley* v. *Watkins*, 293 Ill. 394, relied on by plaintiffs, the questions were propounded on direct examination to witnesses for the proponent of the will and they were permitted to answer. It was there held that the questions were improper when asked of nonexpert witnesses without the proper preliminary examination to qualify such witnesses to give the opinions. The distinction between that case and the case at bar, where plaintiffs themselves laid the proper foundation and elicited opinions as to testator's unsoundness of mind from their own witnesses on direct examination, is readily apparent.

Plaintiffs also complain of a question propounded to their witness, Dr. Hamann, on cross-examination, which, in substance, asked his opinion as to whether testatrix had the capacity to formulate a plan for the distribution of her estate and to put that plan into effect. Assuming, without deciding, that this question, even when asked upon cross-examination of an expert witness, was improper, plaintiffs waived any alleged error in permitting it to be answered by introducing into the trial the same proposition. Counsel for appellants, in questioning Dr. Hamann on redirect examination, defined soundness of mind as knowing, or having the capacity to know, the natural objects of her bounty, the nature and extent of her property and the capacity to formulate a plan for the distribution of that property. Then he was asked the question, "Having that definition in mind, of unsoundness of mind, Doctor, do you have an opinion as to whether or not, on March 27, 1949, Grace Weld was of sound or unsound mind?" The witness answered substantially as he had answered counsel for defendant on earlier cross-examination.

One cannot complain of admission of evidence offered by one party where practically the same evidence is afterward introduced by the party so complaining. *Porter* v. *Terminal Railroad Ass'n,* 327 Ill. App. 645; *Wetzel* v. *Firebaugh,* 251 Ill. 190; *Moyer* v. *Swygart,* 125 Ill. 262.

Plaintiffs also contend that the trial court erred in not giving the following instruction tendered by them: "As a matter of law, that where a person receives the larger share of the property of a testator by his will, or the will is made for the chief benefit of such person in whom the maker reposes confidence and trust, at the time of the execution of the will, and such beneficiary causes the will to be prepared, then a presumption of law arises that the will was procured by the undue influence of such beneficiary, which presumption must be overcome by other evidence in the case, that the execution of the will was the result of the free deliberation and judgment of the maker."

In order to warrant the giving of this instruction the burden was upon the plaintiffs, in the first instance, to prove that the defendant, Mary A. Weld, stood in a fiduciary relationship to the testatrix at the time of the execution of the will and also that she caused the will to be prepared. Even if the fiduciary relationship is established, that fact alone does not shift the burden of proof to the defendant. The presumption of undue influence arises not from the fact of the fiduciary relation, but from the participation of the fiduciary in procuring the execution of the will. *Powell* v. *Bechtel,* 340 Ill. 330; *Cunningham* v. *Dorwart,* 317 Ill. 451.

A careful examination of all of the evidence fails to disclose any proof that Mary Weld caused the will to be prepared or was instrumental in its preparation to such extent that the giving of the requested instruction could be justified. The undisputed evidence shows that Grace Weld first mentioned the making of a will to Brainerd Trigg, a neighbor, who later witnessed her will. She was

advised by him to consult an attorney, which she did. Attorney William Collins, who prepared the will, testified that he had never seen Mary Weld before the day the will was executed and that not Mary but Grace Weld had previously asked him to prepare the will and instructed him as to its contents. Upon his arrival at the home of Mary Weld on the day of the execution of the will, he found Mary and Grace there. He had previously prepared the will in accordance with instructions from Grace. Upon his arrival he advised them they would need three witnesses, and Mary called them on the telephone. Grace read the will, and the attorney read parts of it to her and explained them to her. After reading the will, Grace asked about some stocks and a house and asked Collins whether they were included and said she wanted everything to go to Mary.

Plaintiffs rely solely upon inference from the facts that the testatrix spoke to the lawyer in the presence of the beneficiary, the beneficiary arranged for the witnesses and the will was signed in the beneficiary's home in the presence of the beneficiary.

In *Flanigon* v. *Smith*, 337 Ill. 572, we held that even though the beneficiary may have called the lawyer who drew the will and may have asked persons to be present and witness it, such facts do not raise the presumption of undue influence. In *Powell* v. *Bechtel*, 340 Ill. 330, we held that the facts that the beneficiary and testator were living in the same house, that the beneficiary called for attesting witnesses and was present when the will was signed did not raise a presumption of undue influence. We believe the trial court properly refused the tendered instruction.

We find no prejudicial error in the record, and the decree of the circuit court of Winnebago County is affirmed.

*Decree affirmed.*