JOHN TROJCAK, JR. *et al.*, Plaintiffs-Appellees, *v.* MARGARET E. HAFLIGER, Individually and as Exr. of the Will of Mary Trojcak, Deceased, *et al.*, Defendants-Appellants.

(No. 71-30; 

Fifth District—August 10, 1972.

*Rehearing denied October 11, 1972.*

Duane L. Traynor, of Traynor & Hendricks, of Springfield, for appellants.

Phelps & Russell and Thomas P. Carmody, both of Carlinville, (Carl Kasten, of counsel,) for appellees.

Mr. JUSTICE CREBS delivered the opinion of the court:

The plaintiffs, John Trojcak and Garnet Griffiths, the son and daughter, respectively, of Mary Trojcak, deceased, filed a complaint contesting the

legal validity of decedent's last will and testament. The case was tried before a jury and judgment was entered for plaintiffs and against defendants and the writing purporting to be the last will and testament of decedent was set aside and declared null and void. On appeal, defendants contend that the court erred in its rulings on the admissibility of certain evidence, that plaintiffs' motion *in limine* was improperly granted, that the trial court erred in refusing to grant defendants' post-trial motion and further erred in its instructions to the jury.

The writing in question was executed by decedent on October 3, 1962, and the decedent died on August 22, 1968. The case was presented to the jury on the sole issue of whether decedent had the requisite mental capacity to execute the will in question. Plaintiffs' case consisted of the testimony of a number of lay witnesses who were, for the most part, life-long friends of the testator and of one doctor who had been examining and treating decedent prior to the execution of the will, all of whom gave their opinion concerning decedent's mental capacity. On appeal defendants have raised several issues concerning the admissibility of much of this testimony. Of prime consideration, in our view, is the contention that the court erred in allowing several witnesses to express an opinion as to whether the testator had, on the day of execution, the mental capacity to or was capable of making a will.

Dennis Walk, a neighbor of testator who had known her for approximately 35 years and had had several occasions to see and converse with her during the summer prior to the execution of the will, was questioned concerning his opinion as to various facets of testator's testamentary capacity, and in response thereto, gave an opinion that she was incapable of appreciating the nature and extent of her property or transacting business. He was then asked the following question:

> "Tell the jury, please, whether in your opinion, Mr. Walk, on October 3, 1962, Mary Trojcak had the mental capacity or ability to understand the business she was engaged in when she attempted to make a will?"

The witness gave the following answer over defendants' objection:

> "She wouldn't have had the ability to make a will or sign any papers of that sort."

The next witness, Opal Neff, had known decedent for 20 years and on the basis of this association and on her observations and conversations with decedent in the summer of 1962 was questioned as to her opinion of testator's ability to understand the nature and extent of her property and transact ordinary business. The witness felt testator did not have this ability. She was then asked the following question:

"Tell the jury please whether in your opinion on October 3, 1962, Mary Trojcak had sufficient mind and memory to understand the business she was engaged in when she attempted to or did sign a document which is claimed to be her will?"

The witness gave a negative response over objection.

Helen Hayes, another of plaintiffs' witnesses testified that she had known decedent for approximately 40 years, had observed her during the summer of 1962 and was allowed to give her opinion, over objection, that on the date decedent executed the will she was not of sound mind and memory.

Doctor John Sharp also testified for plaintiffs. He had seen and treated testator in June, July and August of 1962 and had diagnosed her condition as cerebrosclerosis and senile grain syndrome disease which ailments in his opinion would entail a progressive loss of memory and were conditions which gradually worsened with no real hope of improvement. Based on this knowledge and association, the witness was asked the following question:

"Do you have an opinion as to whether or not on October 3, 1962, Mary Trojcak had the mental capacity to understand and comprehend the nature of the act of making a will, to decide upon executing a will, to understand and comprehend the nature and extent of her property, to contemplate her relationship to the material objects of her bounty and to recall and to retain in her mind these persons and facts for a sufficient time to form a rational plan for the distribution of her property and to be able to make a rational choice among such persons?"

He answered, over objection, as follows:

"My opinion of Mary Trojcak from June 12th, 15th, 26th, of June, 29th of July and 18th of August and from observing her and trying to evaluate her mental condition I do not think she had an ability to make a will, take care of herself or her wordly goods, her money or whatever else she might have."

He was then asked whether or not the decedent was, in his opinion, of sound mind and memory on October 3, 1962, the date the will was executed. It was his opinion, again given over objection, that she was not and could not have been.

None of the above witnesses were present when the will was executed and most had not seen testator for a matter of months prior to its execution. It is defendants' position that it was error to allow the above referred to opinions to be given on the grounds that it was improper to relate their opinion to the date the will was executed inasmuch as the

witnesses had not seen decedent on that day and on the further grounds that the opinions invaded the province of the jury. Plaintiff, on the other hand, claims that there is no necessity of seeing the testator on the day the will was executed in order to be able to testify as to his opinion of testator's mental capacity. We agree with this general proposition.

It is well established that proof of the mental condition of the testator a reasonable time either before or after the execution of the will is competent and will be received when it tends to show mental condition at the time of making the will. (*Mitchell v. Van Scoyk*, 1 Ill.2d 160, 176.) Here the lay witnesses who testified had known the testator over a period of many years and the doctor, testifying as an expert, had seen and treated her on at least four occasions during the summer immediately preceding the execution of the will. These witnesses, in view of their association with the testator, were in an ideal position to assist the jury by giving their opinion as to the soundness of testator's mind. They had had the opportunity to form their opinions over the course of many meetings and conversations with testator, some of which were near in point of time to the date of signing the will, and the fact that they had not seen her on the precise day on which the will was executed cannot preclude them from giving their opinion. If the testimony consisted solely of the witnesses' opinions as to decedent's general mental capacity, there would be no error in its reception. Plaintiffs, however, went further and elicited not only the witnesses' general opinion of testator's mental capacity, but their opinions as to testator's mental capacity on the date the will was executed and their conclusions concerning whether testator was, on the day in question, capable of understanding the act of executing a will. This we feel is error.

Plaintiffs argue that it is now permissible to ask a question calling for an opinion and conclusion as to testamentary capacity and that there has been a shift away from the concern courts previously have had over possible invasions of the province of the jury. In support of this argument, they cite *Cleary's Handbook on Illinois Evidence*, section 11.12, page 193, wherein Professor Cleary reaches this conclusion. The cases cited by Professor Cleary do not, however, completely support such a conclusion. In the case of *Powell v. Weld*, 410 Ill. 198, the court held that

"Opinions of witnesses as to sound mind and memory, ability to transact ordinary business, ability to know the nature and extent of property, and the like, are all conclusions of fact which are admissible to enable the jury, under proper instructions as to sound mind and memory, to determine whether the testator had mental capacity to execute his will * * *. It is well settled that, after

laying proper foundation, a witness may give an opinion as to soundness or unsoundness of mind of the testator." *People v. Weld,* 410 Ill. 198, 201-202.

With this appraisal we are in complete accord. However, this is not what was done in this case. Here the witnesses were not merely asked whether they thought testator to be of sound or unsound mind or whether she could appreciate the nature and extent of her property, but were specifically asked whether they felt that on the day the decedent executed the will she was capable of performing and understanding this act. The court in *Powell* assumed, without deciding, that such a question was improper.

In *Heideman v. Kelsey,* 7 Ill.2d 601, the other case cited by Professor Cleary and relied upon by plaintiffs, the sole issue before the court was whether a witness should have been allowed to answer the following question: "Based upon your conversation with him and your years of acquaintanceship with him, do you have an opinion as to whether or not he had the mental capacity to know the value and the extent of the property he owned?" The court there found that it was error to sustain an objection to this question and that the witness should have been allowed to answer it. Again, we have no quarrel with the principle announced, but find that it is not pertinent to our inquiry.

Plaintiffs also cite the case of *Both v. Nelson,* 46 Ill.App.2d 69, in support of their position. In that case a doctor gave his opinion that the testator did not have the mental capacity to make a will (*Both,* at 74). There is, however, no showing that in that case the opposing party ever objected to the giving of the opinion and we do not, therefore, find that case dispositive of the issues before this court.

■■■ In our opinion the law permits a witness to give his opinion as to the condition of testator's mind, but he may not state whether the testator was capable of executing a valid will (*Simpson v. Anderson,* 305 Ill. 172, 179), nor may non-expert witnesses give their opinions as to the mental condition of the testator on the day of the execution of the will when they did not see him or her on that day. (*Baddeley v. Watkins,* 293 Ill. 394, 406.) To allow the witness to form an opinion and conclusion as to testamentary capacity on date of execution on the basis of observations made prior to said date, when such observations are already before the jury, allows the witness to speculate upon the ultimate issue and invade the province of the jury. In our view a witness may not be precluded, assuming a proper foundation has been laid, from giving a general opinion as to testator's mental capicity or a general opinion as to the various elements of testamentary capacity such as testator's ability

to know the natural objects to her bounty, to know the character and extent of her property or the ability to transact any business. A witness may not, however, be allowed to usurp the jury function by giving an opinion as to the testator's capability of excuting a will or, in the case of a non-attesting witness who had not seen the testator on the date the will was made, an opinion as to testamentary capacity on the date of execution. The Supreme Court decided this issue as early as 1911 when it held:

> "Questions put to witnesses whether the testatrix was able to understand the business in which she was engaged when she made this will or able understandingly to execute it, simply called for conclusions of the witnesses as to testamentary capacity, and amounted to an attempt to put the witnesses in the place of the jury and allow them to determine the very question which the jury had been sworn to try. It was proper for the parties to furnish the jury with all the facts relating to the extent of the estate and the number and situation of the relatives as well as with the opinions of witnesses touching the sanity and mental capacity of the testatrix, but the court was right in sustaining the objections to questions calling for opinions on the issue submitted to the jury * * *. The law fixes the degree of capacity required to make a valid will, and it is the proper function of the court to advise the jury as to the rules of law, and it is not proper for witnesses, whether experts or not, to give opinions whether a person was capable of executing a valid will." *Wetzel v. Firebaugh,* 251 Ill. 190, 197.

Inasmuch as we have found it necessary to reverse this case by virtue of the above-cited error, we have no occasion to consider whether the court erred in refusing to grant defendants' post-trial motion. We do, however, find it necessary to comment upon other of the evidentiary issues raised by defendants in order to prevent a repetition of the claims made here in the event of a new trial.

■■■ It is defendants' claim that because the nature of plaintiffs' witnesses' acquaintanceship with testator was for the most part entirely social, they were incompetent to testify as to their opinion of testator's ability to understand the nature and extent of her property and estate, her ability to transact ordinary business and her ability to recognize the natural objects of her bounty. Although it is true that a witness who does not testify to facts sufficient to support an opinion as to the mental capacity of a testator is not privileged to express an opinion thereon (*Milne v. McFadden,* 385 Ill. 11), it is likewise true that the question of whether a proper foundation has been laid to establish the competency of such

testimony is properly in the sound discretion of the trial court and admission of such testimony will not require reversal unless there is a showing that the trial court abused this discretion. (*DeMarco v. McGill*, 402 Ill. 46, 56.) In this case the witnesses who testified had known the testator for many years, had observed her inability to recognize life-long friends, converse rationally upon any subject or to conduct her affairs as she had previously been able to do, and in view of this foundation we cannot say that the court abused its discretion in allowing them to give their opinions as to testator's mental capacity. We do, however, feel that the witnesses should not have been allowed to testify as to testator's ability to transact ordinary business. It has been established that the ability to conduct ordinary business is a higher test of the capacity to make a will than the law allows (*Dowdey v. Palmer*, 287 Ill. 42, 49), and to allow such an opinion to go before the jury would have the effect of confusing the jury as to the requisites of testamentary capacity. However, if the proponants of the will offer testimony concerning testator's ability to transact ordinary business then and in that event, the contestants may elicit opinions concerning that topic since the door would then have been opened. James, *Illinois Probate Law and Practice*, vol. 3, sec. 92.4.

■■ Defendants also contend that the court erred in granting plaintiffs' motion *in limine*. The motion sought to have excluded at the trial any testimony or other evidence which would present to the jury the fact that one of the contestants, Garnet Griffiths, was the mother of illegitimate children. It is defendants' contention that this fact was relevant to establish a reason for treating this child differently from other of her children in her testamentary disposition. In support of this position defendants cite the case of *Piper v. Andricks*, 209 Ill. 564, wherein the court held that it was proper in a will contest to present evidence showing a friendly relationship between testator and one of her daughters and argue that, conversely, it is proper to show alienation. Here, however, there was no showing of alienation and, on the contrary, the only evidence establishes a good relation with the daughter in question. If there was proof of alienation, it would be proper to explain the reason therefor, but in the absence of such a showing, any testimony concerning the facts excluded would be irrelevant, prejudicial and inflamatory.

■■ Defendants further argue that the court erred in sustaining an objection to an offer of proof wherein Mary Stupar, one of the parties-defendant, identified the signature on certain checks as that of the testator. The court sustained the objection on the basis that the witness was incompetent to testify by virtue of the Dead Man's Act. (Ill. Rev. Stat., Ch. 51, sec. 2.) It is defendants' contention that proof of these sig-

natures fell within the exception set forth in section 3 of the Act which, where the claim or defense is founded on a book account or any other record or document, permits a party in interest to testify as to said account book or other record or document made by a deceased person in the usual course of trade, and of his duty or employment to the party so testifying. Here there is no showing that the defense was based upon the writings attempted to be identified; however, even assuming that the writings constitute a valid element of the defense, there was no foundation in said offer of proof as to whether the checks were made in the usual course of business or of any of the other requisite elements under this exception. Furthermore, this question was decided long ago in the case of *Oliver v. Oliver*, 313 Ill. 612, where the court held at page 625 that an interested party testifying in her own behalf, was incompetent to testify as to the signature of testator.

The defendants have also assigned other and further error which we find it unnecessary to discuss in view of our above decision. The judgment of the Circuit Court of Christian County is hereby reversed and the cause remanded for new trial in accordance with the views hereinabove expressed.

Reversed and cause remanded.

G. MORAN and JONES, JJ., concur.