*In re* ESTATE OF RAYMOND KIETRYS, Deceased.—(LAWRENCE KIETRYS, Petitioner-Appellant, *v.* WILLIAM S. KLIETSCH, JR., Ex'r of the Estate of Raymond Kietrys, Respondent-Appellee.)

First District (4th Division)    No. 81-28

Opinion filed January 28, 1982.

Serpico, Novelle, Dvorak & Navigato, of Chicago (Edwin M. Plaza and Stephen C. Debboli, of counsel), for appellant.

Richard A. Cowen and Joan E. Emery, both of Chicago (Schuyler, Ballard & Cowen, of counsel), for appellee.

PRESIDING JUSTICE JOHNSON delivered the opinion of the court:

Petitioner, Lawrence Kietrys, appeals the grant of summary judgment in a will contest in favor of respondent, William S. Klietsch, Jr., who is the executor of the estate of Raymond Kietrys. The sole issue presented

*for review is whether there existed a genuine issue of material fact as to the competency of the testator, Raymond Kietrys.*

We affirm.

On December 19, 1978, Raymond Kietrys died, leaving as his heirs his sister, Irene Barone, his brother, Lawrence Kietrys, and his nephews, Richard, Robert and Raymond Kietrys. A will dated August 27, 1977, provided for the division of all his property between Irene Barone and Lorraine Klietsch. Lorraine had been raised as a daughter by Kietrys' parents, but she had not been formally adopted. On May 30, 1979, Lawrence Kietrys filed a petition for contest of will alleging that decedent was of unsound mind and memory, and that decedent had suffered from chronic alcoholism and did not have the mental capacity to know the nature or extent of his property, the natural objects of his bounty and his relations with them, or the disposition he wished to make of his property. Lawrence also alleged that Lorraine and William S. Klietsch, Jr., the executor, unduly influenced Raymond in making his will. Respondent's motion for summary judgment was granted on December 3, 1980, and petitioner appealed.

Affidavits submitted by respondent Klietsch established the following.

John W. Dubbs III is the attorney who drafted the will of Raymond Kietrys and witnessed its execution on August 27, 1977. In June or July 1977, Raymond telephoned Dubbs and said that he wished to change the executor of his will. Raymond had been an executor for an estate and thought that being an executor was not too difficult although time consuming. He saw no reason why Pioneer Bank should collect a large fee for being executor when William Klietsch, Jr., could handle the estate. Klietsch is the son of Lorraine Klietsch, a beneficiary under the will.

In July 1977, Dubbs met with Raymond to discuss the will. Raymond said that he had not named his brother, Lawrence, as a beneficiary because Lawrence had enough money. Raymond treated both Irene Barone and Lorraine Klietsch as sisters and thought they needed the money more than Lawrence. He saw no reason to leave anything to his nephews, sons of a deceased brother, because he had not seen them for several years. Later, Dubbs rewrote the will with basically the same provisions as an earlier will dated May 12, 1973, but naming a different executor.

On August 27, 1977, Raymond met John Dubbs III at his father's office, where they reviewed the provisions of the will. Kietrys acknowledged the will and signed it in the presence of four witnesses: John Dubbs III, John Dubbs, Jr., Patrick J. Calihan, all attorneys, and Dean J. Polales, a law student. There was general conversation involving Raymond before and after the will was signed.

According to the individual affidavits of these witnesses, Raymond was neatly dressed and groomed. His posture was erect and he walked and moved without assistance in a coordinated manner. His statements were clear, logical and relevant to the topics discussed. There was no odor of alcohol about Raymond, and he was not intoxicated. In the opinion of all the witnesses, Raymond was of sound mind and memory when he signed the will.

Respondent submitted affidavits from Raymond's co-workers. John Januck, Harold Sewick, John Jarosz and Edward Carfora worked at Fruehauf Corporation where Raymond had been continuously employed as a mechanic for 27 years. They had either daily or weekly contact with Raymond. In discussions with him, he was always rational, clear and logical. Januck, in his role as service manager, observed Raymond almost every day from 1970 through 1978 and spoke with him several times each week. He described Raymond as a good, steady worker who received regular raises. In the opinion of all these co-workers, Raymond was of sound mind and memory whenever they had contact with him.

Respondent submitted affidavits which established Raymond's business dealings.

Robert H. Mohs became Raymond's stockbroker in November 1977. He described his business relationship with Raymond. In Mohs' opinion, Raymond demonstrated an average degree of sophistication for an investor. Raymond even understood options trading, which some investors do not understand because it is more technical and involves a more sophisticated analysis.

Manuel Solotke, an attorney, represented Raymond on real estate matters from April 1975 to October 1977. He stated that Raymond was always able to discuss business matters in a rational and coherent manner.

Gerald L. Wadleigh, who bought real estate on contract from Raymond, had contacts with him from 1969 through October 1977 and always found him coherent, alert and logical. Wadleigh believed that Raymond was completely capable of managing his business affairs.

Chester Sulek, pastor of Our Lady of Grace Church, stated that Kietrys was a regular contributor and listed Raymond's annual contributions to the church from 1969 to 1978.

Anne E. Wucki, secretary of the church, had 8 to 10 contacts with Raymond. He contacted her to book Masses for his deceased wife for 6 to 7 years before his death. His letters were handwritten, clearly legible and logical, and the correct fee for the Mass was enclosed. Whenever Wucki saw Raymond he was neatly dressed and well-groomed. She never detected an odor of alcohol on his person.

In the opinion of all these affiants, Raymond was of sound mind and memory on every occasion when they had dealings with him.

Margaret K. Gallagher knew Raymond because Lorraine Klietsch is married to Margaret's brother, William. Since 1970, Gallagher had contact with Raymond six or seven times a year at family gatherings. Whenever she spoke with him, his speech was coherent and clear, and his statements were logical. She never saw him intoxicated. In her opinion, Raymond was of sound mind and memory whenever she saw him.

Affidavits submitted by the petitioner, Lawrence Kietrys, and depositions established the following.

Steven Granat is a foreman at Fruehauf. In 1970 or 1971, he became aware of Raymond's drinking problem. Many times Raymond appeared confused and disoriented at work and often had to be sent home. He suffered minor job injuries as a result of his intoxication and disorientation. Raymond was assigned to nondangerous jobs so that he could work in relative safety. Granat warned Kietrys about drinking on the job. Raymond would go to his locker regularly and return smelling of alcohol. In Granat's opinion, Raymond was an alcoholic whose condition grew progressively worse and, as a result, Raymond was not in control of his mental faculties and was not of sound mind and memory. However, at a deposition, Granat could not say with any degree of certainty whether Raymond was of sound mind and memory on August 27, 1977.

Stanley Mrowczynski had known Raymond for 43 years at the time of his death. When Raymond's wife died, Mrowczynski noticed a change in Raymond's personality. On almost every occasion after the wife's death, Raymond was intoxicated when he visited Mrowczynski. Raymond would talk about the old days and at times his speech was rambling and slurred and very often incoherent. In Mrowczynski's opinion, Raymond was not of sound mind and memory because of his alcoholism. At a deposition, Mrowczynski stated that in 1977, Raymond was of sound mind 80 percent of the time, but he had no opinion as to whether Raymond was of sound mind in August 1977.

Irene Barone is Raymond's sister. They lived in nearby apartments in the same building. After Raymond's wife died, Raymond ate with Irene every day and Irene was his housekeeper. He paid her $20 per week. Irene stated that for 5 years before his death, Raymond would take off sick because he had a drinking problem. He would drink a quart of whiskey a day. She did not know that Raymond had a will until after he died. When she found and read the will in his apartment, she thought that it was unusual that her brother gave half of his property to Lorraine and nothing to Lawrence because Lorraine had done nothing for Raymond. In Irene's opinion, Raymond was of sound mind and body most of the time but not at all times. She had no recollection of where she was on August 27, 1977. She might have been on vacation. She could not state whether or

not her brother, Raymond, was of sound mind and memory on August 27, 1977.

Dr. John E. Meyenberg treated Raymond between November 1972 and his death in December 1978, but not at any time during 1977. In an affidavit, Meyenberg stated that Raymond had an alcoholic addiction problem which most certainly altered his thinking process. However, in his deposition, Meyenberg stated that on every occasion when he treated Raymond he was of the opinion that Raymond was of sound mind and memory.

Petitioner, Lawrence Kietrys, contends there existed a genuine issue of material fact as to the competency of Raymond Kietrys at the time he executed his will and, therefore, the trial court erred in granting respondent's motion for summary judgment.

Summary judgment is appropriate "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Ill. Rev. Stat. 1979, ch. 110, par. 57(3).) The purpose of summary judgment is to determine if any triable factual issues exist. (*Kramer v. McDonald's System, Inc.* (1978), 61 Ill. App. 3d 947, 960, 378 N.E.2d 522, 533.) In ruling on a motion for summary judgment, the trial court should construe the pleadings, affidavits, exhibits and depositions most strictly against the moving party and most liberally in favor of the opponent. (*Shockley v. Ryder Truck Rental, Inc.* (1979), 74 Ill. App. 3d 89, 93-94, 392 N.E.2d 675, 677-78.) Inferences may be drawn from the facts which are not in dispute and, if fair-minded persons could draw different inferences from these facts, then a triable issue exists. (*Lumbermens Mutual Casualty Co. v. Poths* (1968), 104 Ill. App. 2d 80, 88, 243 N.E.2d 40, 45.) The right to a summary judgment must be clear and free from doubt. Because it is a drastic method, summary judgment must not be used to preempt the right to a trial by jury or the right to fully present the factual basis for a case where a material dispute may exist. *Welch v. Chicago Tribune Co.* (1975), 34 Ill. App. 3d 1046, 1050, 340 N.E.2d 539, 542.

■■ Petitioner contends that Raymond Kietrys lacked testamentary capacity. A person has testamentary capacity when he has sufficient mental ability to know and remember who are the natural objects of his bounty, to comprehend the kind and character of his property and to make a disposition of the property according to some plan formed in his mind. (*Kelley v. First State Bank* (1980), 81 Ill. App. 3d 402, 413, 401 N.E.2d 247, 255.) The party asserting lack of testamentary capacity has the burden of proof since the law presumes every man to be sane. (*Shevlin v. Jackson* (1955), 5 Ill. 2d 43, 47, 124 N.E.2d 895, 897.) Proof of incapacity must

relate to the time at or near the making of the will. (*Shevlin v. Jackson* (1955), 5 Ill. 2d 43, 47.) Evidence of mental condition at other times, unless it fairly tends to show the condition of the testator at the time the will was actually executed, is wholly inconsequential. (*Shevlin v. Jackson* (1955), 5 Ill. 2d 43, 47.) After laying a proper foundation, a witness may give an opinion as to the soundness or unsoundness of the mind of the testator. *Powell v. Weld* (1951), 410 Ill. 198, 202, 101 N.E.2d 581, 583.

■■ Respondent submitted affidavits of four persons who witnessed the execution of the will. They all had an opportunity to observe and talk to the testator, Raymond Kietrys, and they all stated that in their opinion he was of sound mind and memory on August 27, 1977. Their testimony is not contradicted by affidavits and depositions submitted by the petitioner. Granat, a co-worker, Mrowczynski, a friend, Barone, a sister, and Meyenberg, a treating physician, were all of the opinion that Raymond was an alcoholic. The most that petitioner has shown is that Raymond Kietrys drank alcoholic beverages, sometimes to excess. But proof of alcohol consumption is not proof of testamentary incapacity. *Shevlin v. Jackson* (1955), 5 Ill. 2d 43, 47.

Furthermore, the evidence shows that Raymond was able to transact ordinary business. Where a man has sufficient mental capacity to transact ordinary business and act rationally in the ordinary affairs of life, he has sufficient mental capacity to dispose of his property by will. (*Shevlin v. Jackson* (1955), 5 Ill. 2d 43, 47-48, 124 N.E.2d 895, 897.) Mohs, Raymond's stockbroker, described the testator as an average investor who understood the more sophisticated options trading. Solotke, an attorney who handled real estate for Raymond, said that he was always able to discuss business matters rationally and coherently. Wadleigh, who purchased real estate from Raymond, stated that Raymond was capable of managing his business affairs.

The evidence submitted by petitioner does not even establish that Raymond lacked testamentary capacity at or near the time he executed his will on August 27, 1977. Granat, Mrowczynski and Barone had no opinion as to whether Raymond was of sound mind and memory on August 27, 1977. Mrowczynski thought that Raymond was competent 80 percent of the time in 1977, and Barone thought that he was competent most of the time. Meyenberg stated that on every occasion when he treated Raymond, the latter was of sound mind and memory. Meyenberg did not treat Raymond anytime during 1977.

■■ Finally, petitioner cites *Catt v. Robins* (1922), 305 Ill. 76, 137 N.E. 101, for the proposition that testamentary capacity is an issue of fact for the jury to decide. That case is not on point. In *Catt*, there was conflicting testimony as to whether the testator was competent. In the case at bar,

there is no conflicting testimony as to whether the testator was competent when he executed his will.

■■ We hold that the trial court properly granted the motion for summary judgment where there existed no genuine issue as to the testamentary capacity of Raymond Kietrys.

For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

Affirmed.

LINN and ROMITI, JJ., concur.