PATRICK CLARKE, Adm'r of the Estate of DENNIS CLARKE, Deceased, Plaintiff-Appellant, *v.* RURAL ELECTRIC CONVENIENCE COOPERATIVE CO., Defendant.—(Alex Jordan, Defendant-Appellee.)

Fourth District   No. 4—82—0187

Opinion filed November 8, 1982.

Gramlich and Morse, of Springfield (Charles J. Gramlich and Robert W. Dodd, of counsel), for appellant.

Grady E. Holley and John L. Swartz, both of Giffin, Winning, Lindner,

Newkirk, Cohen & Bodewes, of Springfield, for appellee.

PRESIDING JUSTICE GREEN delivered the opinion of the court:

This case concerns the duty of a farm operator to inspect his premises to discover hazards that may exist therein, and the farmer's duty to warn an employee of hazards that might have been found.

On August 16, 1978, plaintiff, Patrick Clarke, administrator of the estate of Dennis Clarke, deceased, brought suit in the circuit court of Sangamon County against defendants, Rural Electric Convenience Co-operative Co. (Electric Cooperative) and Alex Jordan, seeking damages for the wrongful death of his 17-year-old son, Dennis Clarke. Count I of the complaint was against the Electric Cooperative and is not at issue here. Count II was against defendant Jordan. On January 27, 1982, the court granted defendant Jordan's motion for summary judgment and made a finding under Supreme Court Rule 304(a). (73 Ill. 2d R. 304(a)) which made the judgment immediately appealable as a matter of right. Accordingly, plaintiff has appealed.

Count II alleged that (1) on August 13, 1977, plaintiff's decedent was an employee of Jordan's on a farm owned and operated by Jordan, (2) the Electric Cooperative maintained an electrical power line over a portion of the farm, and (3) on that date, the deceased was operating Jordan's equipment, mowing grass near the power line, when the deceased made contact with the power line and was electrocuted. The count charged Jordan with (1) failing to warn the deceased that the line was sagging, (2) failing to inspect the area where the deceased was working, (3) allowing a dangerous condition to exist in the area where the deceased was working, and (4) failing to supervise the deceased.

Defendant Jordan supported his motion for summary judgment with excerpts from several discovery depositions of witnesses. Plaintiff filed no evidentiary documents in opposition to the motion. The evidence presented was not in substantial dispute and indicated a situation as hereafter explained. The deceased was mowing a grass area between a little used township road and one of Jordan's fields. He was driving a 1966 model 40—20 Deere diesel tractor with a mower behind it. He had several years' experience in doing farm work, had good eyesight, had often used mowing equipment, and had mowed the same area two times before. On the day of the tragedy, Jordan told the deceased he could either mow or do other work, and the deceased chose to mow. The deceased had mowed during the morning and continued to do so in the afternoon. About one week earlier, a storm oc-

curred and a passerby noticed that the electric wire was sagging and a cross arm of a supporting pole was broken. Prior to the tragedy, another person passed by and also noticed that the wire was sagging and that a pole had apparently been struck by lightning. Defendant Jordan had not been told about the condition of the wire and knew nothing about it.

Late in the afternoon, plaintiff went to the Jordan farm to find his son and saw a tractor with mower attached driving in circles on the opposite side of the road. Upon approaching, plaintiff saw his son's body slumped over the wheel with his arm caught in the wheel in such a way that the wheel was locked in a turning position. The condition of the body showed the son had been electrocuted. Plaintiff stated nothing indicated the equipment had touched the pole, and he could not tell whether it had touched the power line. Defendant Jordan had spread herbicide around the poles so that mowing near them was not necessary.

■ The thrust of plaintiff's theory of recovery under count II is that defendant Jordan breached his duty to the deceased to furnish him a safe place to work because he failed to reasonably inspect the premises and failed to find and warn the deceased of the hazard created by the sagging wire. This obligation of reasonable inspection is generally an element of the duty of an employer to furnish employees a safe place to work. (*Stone v. Guthrie* (1957), 14 Ill. App. 2d 137, 144 N.E.2d 165; Restatement (Second) of Agency sec. 492 (1958).) This duty has been held applicable to employers who are farmers. (*Stone.*) "The duties of a master to his servant with respect to the working conditions of the premises upon which the servant is employed are substantially the same as those of a possessor of land to a business guest." (Restatement (Second) of Agency, title C, Non-Delegable Duties of Master, Introductory Note, at 435 (1958).) Citing *Genaust v. Illinois Power Co.* (1976), 62 Ill. 2d 456, 343 N.E.2d 465, and Restatement (Second) of Torts sec. 343 (1965), defendant Jordan contends that he had no duty to the deceased because the hazard here was one which the deceased could be expected to discover and appreciate.

The facts in *Genaust* are somewhat similar to those in the instant case. That plaintiff was alleged to be an independent contractor who contracted with one of the defendants to install an antenna and tower on that defendant's property. He claimed he was injured when the apparatus he was erecting came near uninsulated power lines that passed close to that defendant's property and electricity arced from the lines to the apparatus. The plaintiff asserted in one count that defendant was liable for failure to warn him of the existence and

proximity of the wire. The trial court dismissed the count for failure to state a cause of action. The supreme court affirmed relying on the Restatement (Second) of Torts sec. 343, at 215-16 (1965), which states:

"A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he

(a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and

(b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and

(c) fails to exercise reasonable care to protect them against the danger."

The *Genaust* court concluded, as a matter of law, that (1) the defendant to the count would not have discovered the danger of the wires in the exercise of reasonable care because they were neither on his property nor under his control, (2) the plaintiff by contracting with that defendant represented he had sufficient knowledge to perform the task, and the defendant could assume plaintiff would appreciate the danger in erecting metal apparatus near electrical wires, and (3) nothing indicated that the lines were hidden and the danger of such wires is a matter of common knowledge. The general theory of *Genaust* has been followed in *Longnecker v. Illinois Power Co.* (1978), 64 Ill. App. 3d 634, 381 N.E.2d 709, a case also involving injury from electricity and in *Sepesy v. Archer Daniels Midland Co.* (1981), 97 Ill. App. 3d 868, 423 N.E.2d 942, where electricity was not involved.

This case differs from *Genaust* in that there, the power lines were not on the defendant's property, and the injured party was an independent contractor-electrician who was presumed to have a high degree of knowledge of the propensities of electricity. Here, the defendant was the possessor of the land, and the relationship between the parties was that of master-servant. We recognize that the danger of electricity is a matter of common knowledge (*Genaust*), and that plaintiff indicated that the deceased understood the dangers of electricity. However, the evidence was that the line had sagged to a point where it was not less than 10 feet nor more than approximately 16 feet from the ground. The evidence also showed that the tractor used had an exhaust pipe that extended to a height of about 10 feet above the ground. Under these circumstances, the deceased could have brought the tractor under the wire at a point where the metal exhaust pipe was in fairly close proximity to the wire and received a jolt

of electricity by the arcing process. Whether we could hold as a matter of law that under those circumstances a 17-year-old farmhand would be deemed to have knowledge of the hazard, would be a difficult question.

We need not determine whether the deceased should be held to have appreciated the hazard because under the evidence presented, defendant Jordan could not be found to have constructive knowledge of the hazard. A determination by a trier of fact that the defendant had a duty to inspect the premises in the week between the storm and the tragedy could not stand. The question of whether a person has a duty to inspect premises or has failed to make an inspection within a reasonable time after a hazard has developed is usually a question for a trier of fact. However, when the time is clearly too short to create the duty, the court should so rule as a matter of law. (*Hresil v. Sears, Roebuck & Co.* (1980), 82 Ill. App. 3d 1000, 403 N.E.2d 678.) Where, as in *Hresil,* the premises consisted of the floor of a grocery store, a period of 10 minutes between the creation of the hazard and the injury to an invitee was held, as a matter of law, to be too short a period to support a finding that the occupier of the store should have inspected and found the hazard. Here, where the premises consisted of substantial rural acreage, a period of one week between the creation of the hazard and the tragedy is similarly too short a period to raise a question of fact as to whether defendant Jordan should have inspected the area where the mowing took place and discovered the hazard.

■ Accordingly, we affirm the summary judgment for defendant Jordan. We do so on the basis that his failure to inspect during the week after the storm could not be deemed unreasonable rather than on the basis that, as a matter of law, the hazard was obvious to the deceased. Absent the defendant's knowledge of the sagging line or his unreasonable failure to inspect and obtain that information, a necessary element for his liability is lacking and summary judgment was proper.

Affirmed.

MILLS and LEWIS, JJ., concur.