FRANK BEZAN, Plaintiff-Appellant, v. CHRYSLER MOTORS CORPORATION, Defendant-Appellee and Third-Party Plaintiff (J.S. Alberici Construction Company, Inc., *et al.*, Defendants-Appellees; Jervis B. Webb Company, Third-Party Defendant and Intervenor).

Second District    Nos. 2—93—0248, 2—93—1165 cons.

Opinion filed June 23, 1994.

BOWMAN, J., concurring in part and dissenting in part.

John F. Dziedziak, of Williams & Marcus, of Chicago, for appellant.

Timothy V. Hoffman, Ed Robles, and Francine M. Stulas, all of Sanchez & Daniels, of Chicago, for appellee Chrysler Motors Corporation.

Daniel F. Konicek, of Connelly, Mustes & Schroeder, of Geneva, for other appellees.

Francis D. Morrissey, of Baker & McKenzie, of Chicago, for Jervis B. Webb Company.

PRESIDING JUSTICE INGLIS delivered the opinion of the court:

In this consolidated appeal, plaintiff, Frank Bezan, contests two separate decisions of the circuit court of Boone County to grant summary judgment to each defendant, J.S. Alberici Construction Company, and J.S. Alberici Management Company (Alberici), and Chrysler Motors Corporation (Chrysler). Plaintiff brought this action to recover damages for personal injuries he sustained while working at Chrysler's plant. The two issues presented on appeal are whether the trial court properly found that (1) plaintiff was not entitled to the protection of the Structural Work Act (Ill. Rev. Stat. 1987, ch. 48, par. 60 (now 740 ILCS 150/1 (West 1992)), and (2) defendants were not liable for common-law negligence. We dismiss the appeal as to Alberici (No. 2—93—0248) and affirm the appeal as to Chrysler (No. 2—93—1165).

Plaintiff, a millwright, was hired by Jervis B. Webb (Webb) to install new conveyor lines at the Chrysler assembly plant. The assembly plant was changing the production equipment and assembly tools, or "retooling," to manufacture new automobile models. Chrysler solicited Webb to install an inverted power and free conveyor throughout the plant. Chrysler employed Alberici to oversee the changeover operation, which included the installation of body shop equipment and robotics.

The conveyor rail, which plaintiff was attempting to install at the time of his accident, is a steel beam that is approximately 4 to 5 inches high, 2 inches wide, 18 feet long, and weighs approximately 300 pounds. Such rails are hung from headers which extend from the ceiling, approximately 10 to 11 feet from the floor. Previously, the rails were installed by three millwrights, one on each end of the rail, and one in the middle. The millwrights would carry the rail up ladders or scaffolding, clamp it to the headers, and weld it once it was properly aligned.

Webb altered the method of installation just prior to the accident in order to accelerate the process. Rather than lifting individual rails, Webb instructed plaintiff to weld two or three rails together and then elevate them with a fork lift. The rails were placed on top of a tool trunk which was then placed on the forks of the forklift in order to raise the beams to the proper height. As the fork was lifted, the rails apparently shifted and pinned plaintiff against a column in the plant, causing his injuries.

Plaintiff sued Alberici and Chrysler for violation of the Structural Work Act (Ill. Rev. Stat. 1987, ch. 48, par. 60 (now 740 ILCS 150/1 (West 1992))) (count I) and for negligence (count II). Numerous claims were filed. Chrysler sued Webb as a third-party defendant, and Webb intervened. Subsequently Webb was dismissed as the third-party defendant. Alberici also counterclaimed against Chrysler. Alberici filed a motion for summary judgment, and on January 26, 1993, the trial court sent a memorandum to each party explaining its decision to grant summary judgment on both counts to Alberici. Counsel was advised to prepare a written order based on this decision. Plaintiff filed his appeal on February 25, 1993. The written order was filed on March 10, 1993. Chrysler filed its motion for summary judgment in September 1993. Plaintiff timely appealed from the order granting Chrysler summary judgment on both counts. Pursuant to plaintiff's motion, this court ordered the two appeals consolidated. For the following reasons, we must dismiss the appeal as to Alberici.

■ An appellate court may only hear appeals from final judgments, unless an exception specified by the supreme court rules applies. (*Hicks v. Weaver* (1994), 255 Ill. App. 3d 650, 652; Official Reports Advance Sheet No. 26 (December 22, 1993), R. 301, eff. February 1, 1994.) Until a written judgment is filed, the proceedings are not finalized. (*In re Marriage of Black* (1987), 155 Ill. App. 3d 52, 54.) A bare announcement of a final judgment cannot be attacked by motion, cannot be appealed, and cannot be enforced. *Black*, 155 Ill. App. 3d at 54.

Supreme Court Rule 271 requires that when a court rules on a

motion outside the course of a trial, the attorney for the prevailing party must prepare and present to the court an order or judgment to be entered, unless the court directs otherwise. (134 Ill. 2d R. 271.) Supreme Court Rule 272 states that the clerk will make a notation in the record when a written order is presented and that a signed order is final when filed. (134 Ill. 2d R. 272.) Supreme Court Rule 303(a)(1) requires that an appeal must be filed within 30 days after the judgment has become final. (Official Reports Advance Sheet No. 26 (December 22, 1993), R. 303(a)(1), eff. February 1, 1994.) The record indicates that an order was prepared and entered as directed. Plaintiff, however, filed the notice of appeal prior to the entry of the order. Plaintiff failed to file the notice of appeal after the circuit court's order became final. An order cannot be appealed before it is entered. Therefore, we must dismiss the appeal as to Alberici.

The threshold question in the appeal regarding Chrysler is whether plaintiff is entitled to the protection of the Structural Work Act (Ill. Rev. Stat. 1987, ch. 48, par. 60 (now 740 ILCS 150/1 (West 1992))). Such protection would result if two elements necessary for liability under the Act can be attributed to Chrysler. The pertinent sections of the Act provide:

> "1. All scaffolds, hoists, cranes, stays, ladders, supports, or other mechanical contrivances, erected or constructed by any person, firm or corporation in this State for the use in the erection, repairing, alteration, removal or painting of any house, building, bridge, viaduct, or other structure, shall be erected and constructed, in a safe, suitable and proper manner ***.
>
> * * *
>
> 9. For any injury to person or property, occasioned by any wilful violations of this Act, or wilful failure to comply with any of its provisions, a right of action shall accrue to the party injured *** by reason of such wilful violation or wilful failure as aforesaid ***." (Ill. Rev. Stat. 1987, ch. 48, pars. 60, 69 (now 740 ILCS 150/1, 9 (West 1992).)

Plaintiff first argues that the work he performed at Chrysler's plant constituted an "alteration" of a "structure" within the meaning of the Act. Plaintiff bases this assertion upon the fact that the plant's interior was essentially gutted, miles of conveyor were installed, permanent fixtures were removed, and the rails, which plaintiff was installing at the time of his accident, were welded to headers, which are permanent parts of the structure. Chrysler contends that the Act does not contemplate the equipment installation of a conveyor system into a structure already built. Chrysler focuses its argument on whether the conveyor system is a structure.

We agree with plaintiff that Chrysler's argument that the conveyor system was not a structure is unresponsive to plaintiff's contention that the plant was altered by plaintiff's construction activity. Whether a structure is "altered" is a matter of statutory construction and, therefore, a question of law. (Compare *Innis v. Elmhurst Dodge, Inc.* (1985), 107 Ill. 2d 151, with *Jackson v. Back of the Yards Neighborhood Council* (1992), 240 Ill. App. 3d 128.) Consequently, we must ascertain whether, as a matter of law, the installation of the rails constituted an alteration of the building within the meaning of the Act.

Plaintiff relies on *Smith v. Excello Press, Inc.* (1988), 169 Ill. App. 3d 1084, to support his argument that the work he performed constituted an alteration of the plant. In *Smith*, the plaintiff, a pipe fitter, was hired to connect and hang pipes at a printing company. He slipped and fell on a metal rod which was covered by sheets of glossy paper while carrying pipe from a truck to a scaffold. The court concluded that the plaintiff was merely transporting materials to the workplace. He was using the plant floor as a pathway and thus was not engaged in the type of activity that the Act was intended to cover. (*Smith*, 169 Ill. App. 3d at 1095.) Although the plaintiff's activity was not within the Act, the court found that because of the extent and permanence of the piping installation, its erection constituted an alteration of the building structure. *Smith*, 169 Ill. App. 3d at 1095-96.

■ By analogy, the interior of Chrysler's plant had been internally demolished. Permanent fixtures were torn out and the inside of the plant was reconfigured. At one point, close to 3,000 employees were working toward a multimillion dollar changeover in which the installation of the conveyor was one phase of a total overhaul. The rails which plaintiff was installing at the time of his accident were permanently welded to the plant's ceiling throughout the building. It would be unreasonable to contend that such work did not involve the "alteration" of Chrysler's plant, which would be within the Act. Moreover, the conveyor assembly, including the welded beams, could not be moved without first dismantling them, and their erection was necessary to permit Chrysler's desired use of the plant to produce new automobile models. See *McKanna v. Duo-Fast Corp.* (1987), 161 Ill. App. 3d 518 (immovable air-conditioning equipment, installed partly within a building and partly on the roof, and whose duct work ran throughout the building forming integral part, was a "structure"); *Simmons v. Union Electric Co.* (1984), 104 Ill. 2d 444 (repair of temporary sump pump, in context of repairs to plant of which ash pit holding pump was part, was repair of structure, whether or not pit

was considered a structure by itself or an integral part of the plant); *Gall v. Metropolitan Sanitary District of Greater Chicago* (1982), 109 Ill. App. 3d 502 (cleaning sludge tank was necessary first step in contractually specified plan of repair and alteration of structure).

*Kittleson v. United Parcel Service, Inc.* (1987), 162 Ill. App. 3d 966, relied upon by Chrysler, although factually similar to the present case, is distinguishable. The court never addressed whether the conveyor system which was being assembled altered the existing building. The court held that the Act did not apply, because the plaintiff's injury was caused when a co-worker tripped. (*Kittleson*, 162 Ill. App. 3d at 970-71.) In *Bitner v. Lester B. Knight & Associates, Inc.* (1974), 16 Ill. App. 3d 857, 862, the plaintiff was an electrician who was merely performing maintenance on a conveyor system which had been erected a year earlier and was not involved in a construction activity.

The Act provides protection to those workers who are engaged in extrahazardous work. (*Lafata v. Village of Lisle* (1990), 137 Ill. 2d 347, 353.) The Act should be liberally construed; however, it was not intended to cover all construction work. (*Lafata*, 137 Ill. 2d at 354; *Vuletich v. United States Steel Corp.* (1987), 117 Ill. 2d 417, 422.) Though we find that plaintiff was engaged in the alteration of a structure in terms of the Act, he failed to establish another element: that Chrysler's violation of the Act was wilful.

A wilful violation of the Act can occur only when one having charge of the work knows or, in the exercise of reasonable care, could have discovered that a dangerous condition exists. (*Simmons*, 104 Ill. 2d at 453.) The issue of whether a defendant committed a wilful violation is ordinarily treated as a question of fact (*Roedner v. Central Illinois Public Service Co.* (1983), 117 Ill. App. 3d 81, 84), unless uncontroverted evidence is presented (*Delgatto v. Brandon Associates, Ltd.* (1989), 131 Ill. 2d 183, 193-94; *Marine Bank v. Archer Daniels Midland* (1987), 156 Ill. App. 3d 576, 579-80).

Plaintiff argues that Chrysler's managers, who were on site, had the authority to stop the work of any contractor for safety reasons and actively took responsibility for safety inspections. However, evidence was introduced that the method employed by plaintiff was done for the first time when the injury occurred and that Chrysler never directed the manner and method of plaintiff's work. Thus, Chrysler did not have the opportunity to prevent the dangerous work method being employed by plaintiff's foreman. In view of this uncontroverted evidence, it is clear that Chrysler did not commit a wilful violation of the Act. Therefore, the trial court properly granted summary judgment as to count I of plaintiff's complaint.

■ The second issue to be considered is whether the trial court erred in ordering summary judgment on plaintiff's claim of common-law negligence. Plaintiff contends that Chrysler owed a nondelegable duty to employees of subcontractors to provide a safe place to work. We find no duty under the circumstances of this case.

It is true that one who entrusts work to an independent contractor and retains control over the work can be liable for injuries to those for whose safety the employer owes a duty to exercise reasonable care, which is caused by his failure to exercise his control with reasonable care. (Restatement (Second) of Torts § 414 (1965); *Fris v. Personal Products Co.* (1994), 255 Ill. App. 3d 916, 924.) However, there must be such a retention of a right of supervision that the contractor is not entirely free to do the work in his own way. (Restatement (Second) of Torts § 414, Comment *c*, at 388 (1965).) As previously stated, plaintiff testified that the placement of the rails on the tool box which was placed on a forklift was conceived by his employer immediately prior to plaintiff's accident. There is no testimony or evidence to suggest that Chrysler knew or had notice of the hazardous method employed within this restrictive time period. Furthermore, the time period was too short to create a duty to inspect the premises before or within a reasonable time after the hazard had developed. See *Clarke v. Rural Electric Convenience Cooperative Co.* (1982), 110 Ill. App. 3d 259, 263.

Summary judgment is proper when the parties agree upon the facts, but dispute the correct construction of the applicable statute and whether the facts sustain a cause of action. (*American National Bank & Trust Co. v. National Advertising Co.* (1992), 149 Ill. 2d 14, 22.) Accordingly, under these circumstances, summary judgment was properly granted to Chrysler on both counts.

For the reasons stated above, we dismiss appeal No. 2—93—0248 and affirm appeal No. 2—93—1165.

No. 2—93—0248, Dismissed.
No. 2—93—1165, Affirmed.

PECCARELLI, J., concurs.

JUSTICE BOWMAN, concurring in part and dissenting in part:
I respectfully concur in part and dissent in part.

I concur in the majority's reasoning and conclusion that Alberici's appeal must be dismissed. I concur in the majority's opinion and reasoning that the work involved an "alteration" of Chrysler's plant. I disagree with the majority's reasoning and finding that Chrysler is

entitled to summary judgment on the Structural Work Act violation and the negligence action. The Act imposes liability for a wilful violation of its provisions. (*Simmons v. Union Electric Co.* (1984), 104 Ill. 2d 444.) A wilful violation occurs when one having charge of the work knows that a dangerous condition exists as to a scaffold, or by the exercise of reasonable care could have discovered the existence of the dangerous condition. *Simmons*, 104 Ill. 2d at 453.

The question of whether a violation is wilful under the Act is ordinarily a question of fact for the jury. (*Zizzo v. Ben Pekin Corp.* (1979), 79 Ill. App. 3d 386, 396.) It becomes a question of law only when the facts are not disputed and where there can be no difference in the judgment of reasonable persons or inferences drawn. (*Dickmann v. Midwest Interstate Electrical Construction Co.* (1986), 143 Ill. App. 3d 494, 497.) Even when the facts are undisputed summary judgment is inappropriate where fair-minded persons could arrive at different inferences from the undisputed facts. (*In re Estate of Kietrys* (1982), 104 Ill. App. 3d 269, 273.) As will be shown, I believe different inferences can be drawn from the facts of this case.

As for the negligence action premised on unsafe working conditions, in *Haberer v. Village of Sauget* (1987), 158 Ill. App. 3d 313, the court held that a genuine issue of material fact prevented the entry of summary judgment on behalf of an owner against an employee of an independent contractor suing in negligence. Applying section 414 of the Restatement (Second) of Torts (Restatement (Second) of Torts § 414 (1965)), the court held that an employee hired by an independent contractor to do construction work may obtain recovery for injuries sustained in the course of the work from the owner of the premises where the owner had retained the requisite control over the work and had failed to exercise that control properly. *Haberer*, 158 Ill. App. 3d at 319-20.

The uncontroverted facts demonstrate that Chrysler had a crew of engineers and managers regularly on site to supervise the work. Chrysler's agent, Alberici, through its designated safety engineer, John Langford, had a right to stop the work. Langford was on the site daily. Bill White, Chrysler's safety man, was also regularly on the site.

The majority reasons that because it is uncontradicted that the method of welding and lifting the steel beams was done for the first time without Chrysler's concurrence or direction, it follows as a matter of law that Chrysler did not commit a wilful violation because Chrysler did not have the opportunity to prevent the dangerous method employed by plaintiff's foreman. Citing no cases with a similar result, the majority essentially ignores the fact that Chrysler's

agents had the power to control work-safety procedures and that its agents were regularly on the premises. The majority also ignores the following facts: the welding equipment and hoist equipment had to be brought to the site to weld the 18-foot-long, 300-pound steel beams, and the act of welding two or three steel beams takes time and a finite amount of space. The amount of time and space is not specified in the record. During this time and space exercise, a fair-minded fact finder could infer that Chrysler's agent should have become aware of the acts of welding and making preparation for lifting the beams and taken appropriate reasonable actions within the context and purposes of the Act and principles of common-law negligence. An owner who is in charge of construction may not escape liability by closing its eyes to the defect at the moment of the accident, if the evidence shows that ordinary care or inspection would have uncovered the defect. (*Katz v. Shaf Home Builders, Inc.* (1981), 94 Ill. App. 3d 526, 529.) Whether Chrysler, by its agent, should have known of the dangerous work condition, under the facts of the case before us, should be a question for the fact finder. Accordingly, I would reverse the order of the trial court granting summary judgment in favor of Chrysler.