JOHN J. WARREN, Plaintiff, v. JOHNSON & JOHNSON, Defendant and Third-Party Plaintiff-Appellee.—(UNITED PIPING CONTRACTORS, Third-Party Defendant-Appellant.)

First District (5th Division)   No. 61478

Opinion filed May 28, 1976.—Rehearing denied July 14, 1976.

Michael J. Merlo, of Pretzel, Stouffer, Nolan & Rooney, Chartered, of Chicago (Joseph B. Lederleitner, of counsel), for appellant.

Hinshaw, Culbertson, Moelmann, Hoban & Fuller, of Chicago (D. Kendall Griffith and Jean Hamm, of counsel), for appellee.

Mr. JUSTICE BARRETT delivered the opinion of the court:

This action was brought by John Warren, an employee of the United Piping Company, against defendant, Johnson & Johnson, under the Structural Work Act (Ill. Rev. Stat. 1971, ch. 48, par. 60 *et seq.*), for injuries sustained on May 27, 1971 when a ladder on which plaintiff was working allegedly broke or collapsed. Plaintiff's complaint alleged that defendant, Johnson & Johnson, was "in charge of" the alteration of a certain building in Lemont, Illinois, in which plaintiff was injured and violated the statute by failing to provide a scaffold or a safe ladder. Defendant filed an answer denying the substance of the allegations of the complaint, and also filed a third-party complaint against United Piping, a plumbing subcontractor and the employer of plaintiff, for common law indemnity. At the close of evidence for Johnson & Johnson, plaintiff and United Piping moved for a directed verdict. The court reserved ruling on both motions. The jury found for plaintiff and against defendant, Johnson & Johnson, and assessed damages in the sum of $55,000. It then found in favor of Johnson & Johnson and against United Piping on the third-party action. By an answer to a special interrogatory, the jury also found that defendant, Johnson & Johnson, was not actively in violation of the Structural Work Act at the time of the occurrence. United Piping filed a post-trial motion, which the court denied.

On appeal United Piping contends that the court erred in not granting United Piping's motion for a directed verdict and that the verdict of the jury and its answers to a special interrogatory are against the manifest weight of the evidence.

Robert Pinske, president of United Piping, testified that he entered into an agreement with Johnson & Johnson for certain work at its baby powder facility. Pinske stated that this was a time and materials job which meant that United Piping furnished the work equipment such as the scaffolding, tools and welding equipment and would submit invoices to Johnson & Johnson every two weeks. He stated that a room was provided at the facility so that United could store its equipment. Pinske testified that welders doing work 14 feet above the floor would use all types of support which sometimes included scaffolding and other times just ladders. Harry Weiler was plaintiff's immediate superior.

Robert Mustari testified that as an engineer he was employed by Johnson & Johnson to serve as project manager at their baby powder facility. His duties, along with the duties of his two assistants, Clare Ruter and John Kubida, were to see that the work being done by United Piping was completed according to drawings and specifications. He never gave instructions to the tradesmen, but rather would work with the various trades through the supervisors or owner of the contracting company. On May 24 or 25 he informed all of the superintendents of trades, including

Weiler, that Johnson & Johnson management personnel would be touring the facility on May 26 and that the work area should be cleaned up. He said by this he meant removing loose equipment, loose piping tools, ladders and scaffolding and storing them until the tour had passed through. Mustari stated that he did not have a conversation with either Weiler or Ruter requesting or instructing that the scaffold not be put back after the tour.

Clare Ruter testified that he was employed by Johnson & Johnson as a process engineer reporting to James Mustari. His duties included observing whether the trades did their job properly. Ruter spoke with Weiler on the night of May 26 after the tour had gone through about relocating a certain vacuum line in the baby powder room. He did not, however, have any conversation with United Piping's welders about the relocation or where the welds were to go or how they were to be made. Ruter testified that United Piping used their own scaffolding and that he neither instructed, told, ordered nor had any conversation with Weiler about not replacing the scaffolding to reach the vacuum piping.

John Kubida testified that he was employed by Johnson & Johnson as an electrical engineer. He stated that he, Mustari and Ruter worked as a team in supervising the work being done by the trades. On the day of the occurrence he was the only one present overseeing the work since his co-workers were at a meeting outside of the plant.

Harry Weiler, who was called as an adverse witness under section 60, testified that he was employed in May, 1971 as a superintendent for United Piping at the Johnson & Johnson facility. During the week prior to the occurrence, he supervised plaintiff and a co-worker in the baby powder room. Ruter had given him drawings showing where the vacuum lines were to be relocated. On the morning of May 27 he instructed his men that the vacuum line had to be moved and that though most of it could be done from the ceiling, they would have to find a ladder to finish it up. Weiler testified that on May 25, the day before the tour, Ruter told him to remove the scaffolding and not to replace it after the tour had been completed.

Plaintiff testified that he was a welder for United Piping in May, 1971. He had been working from a scaffold installing vacuum lines, when on May 25 he was instructed by Weiler to dismantle the scaffolding and put the parts on a truck. Plaintiff stated that on May 27 he asked Weiler for scaffolding from which he could relocate the vacuum lines, but was told to find what he could. Since a high lift was being used in another room plaintiff and his coworker Gilboy obtained a ladder from United's storage room. He said that he was on the ladder about two hours before the occurrence.

Martin Gilboy testified that he was employed by United Piping as a

pipefitter. On May 27 he and plaintiff were told by Weiler to move the vacuum lines and since no scaffold was available, they were told to use whatever they could get. As plaintiff worked on the ladder, Gilboy noticed that it began to move and then slip down, causing plaintiff to fall. He had previously noticed that the ladder was unsteady, but he cannot remember complaining to Weiler or talking to plaintiff about it.

Johnson & Johnson does not dispute appellant's allegation that as the general contractor at its Lemont facility Johnson & Johnson was "in charge of" the work being performed there, and that by its failure to supervise or correct the conduct of United Piping it violated the Structural Work Act. (Ill. Rev. Stat. 1971, ch. 48, par. 60 *et seq.*) Therefore, the question before the court is not what constitutes a violation of the Structural Work Act, but rather whether Johnson & Johnson's misconduct was of a passive nature, as opposed to the active misconduct of United Piping, so as to entitle it to indemnification.

OPINION

■■ Indemnity is proper in Structural Work Act cases where there is a qualitative distinction between the negligence of two tort-feasors. This distinction is described more appropriately in terms of the indemnitor being guilty of active negligence and the indemnitee as guilty of passive negligence. (*Lindner v. Kelso Burnett Electric Co.*, 133 Ill. App. 2d 305, 273 N.E.2d 196.) Though liability under the Structural Work Act properly attaches only to those having charge of the operation or construction who have wilfully violated the provisions of this act, this does not mean that persons found liable thereunder are necessarily active wrongdoers. *Gannon v. Chicago, Milwaukee, St. Paul & Pacific R.R. Co.*, 22 Ill. 2d 305, 175 N.E.2d 785; *Miller v. DeWit*, 37 Ill. 2d 273, 226 N.E.2d 630.

The Illinois Supreme Court recently addressed itself to the distinction between active and passive negligence in *McInerney v. Hasbrook Construction Co.*, 62 Ill. 2d 93, 338 N.E.2d 868. In that case plaintiff, who was injured when a ladder on which he was standing slipped out from under him, filed suit against the general contractor Hasbrook based on defendant's negligence and violation of the Structural Work Act. Hasbrook, in turn, filed a third-party indemnity action against plaintiff's employer, Universal Painting Contractors. The jury returned a verdict on behalf of Hasbrook and against Universal in the third-party action. The trial court entered judgment notwithstanding the verdict on behalf of Universal, and the Appellate Court affirmed. The Supreme Court reversed, stating that the question of implied indemnification was properly determined by the jury. In holding that the misconduct of Hasbrook could be considered qualitatively dissimilar to that of Universal, the court relied upon the fact that Hasbrook only coordinated

the project while Universal provided a foreman to supervise plaintiff's work and might have stopped the work if it was performed in an unsafe manner, controlled the actual painting activity, and provided its own material for this work. In so holding the court expressly reaffirmed the rationale of *Miller v. DeWitt*, 37 Ill. 2d 273, 226 N.E.2d 630, which quoted with approval from *Rovenkamp v. Central Construction Co.*, 45 Ill. App. 2d 441, 195 N.E.2d 8, where it was said that:

> " * * * Although the liability imposed by the [Structural Work] Act does not rest upon negligence, there can be degrees of fault among those who, under the Act, are accountable to an injured plaintiff. Who is the more culpable, a party who supervises and coordinates the overall project, or a party who is responsible for the scaffolding and the particular work which produced the injury? Both are in charge of the work * * *. Neither can escape liability to the [injured] plaintiff—thus the purpose of the Act is accomplished—but the lesser delinquent, if held accountable by the plaintiff, can transfer its statutory liability to the active delinquent, whose dereliction from duty brought about the plaintiff's injury."

■■ In determining whether the trial court properly refused to direct a verdict in favor of United Piping we must view the evidence under the standard set in *Pedrick v. Peoria & Eastern R.R. Co.*, 37 Ill. 2d 494, 229 N.E.2d 504. That is, the verdict rendered by the jury in favor of Johnson & Johnson on the issue of indemnity should be allowed to stand unless all of the evidence (viewed in its aspect most favorable to Johnson & Johnson) so favors United Piping that no verdict contrary to United could stand. The record shows that the Johnson & Johnson engineers were on the job in a supervisory capacity, limited to making sure that the work was completed according to plans and specifications. Written drawings showing where the vacuum line was to be moved had been given to Weiler, United Piping's foreman, who in turn directed the welders working under his supervision. Johnson & Johnson employees did not give any directions to the pipefitters as to where the relocation should be made. Though Weiler was instructed to clean up the area for the tour that would be passing through, both Ruter and Mustari testified that they at no time gave Weiler an instruction not to re-erect the scaffold. Testimony was also had that United owned the scaffold, and that Weiler gave plaintiff and his co-worker instructions to dismantle it. Weiler testified that he told the welders that they would have to find a ladder to move the vacuum line. Both Weiler and Pinske testified that there was nothing wrong with using a ladder for welding at 14-foot heights. We are of the opinion that substantially all of the evidence indicates that United Piping which was responsible for the scaffolding, and the particular work which

produced the injury, and who provided a foreman to direct the welders in their work was more culpable than Johnson & Johnson who supervised the overall project. For this reason, the trial court's refusal to direct a verdict in favor of United Piping was proper.

Appellant then contends that the verdict transferring liability to United and the special interrogatory finding that Johnson & Johnson was not actively in violation of the Structural Work Act is against the manifest weight of the evidence. It is well-established law that a reviewing court cannot substitute its judgment for that of a jury in passing on the weight of the evidence. (*Whitman v. Prescott*, 80 Ill. App. 2d 49, 225 N.E.2d 384.) A court will overturn a verdict only if it is contrary to the manifest weight of the evidence. By manifest weight is meant the clearly evident, plain and undisputable weight. (*Graf v. Ford Motor Co.*, 102 Ill. App. 2d 390, 243 N.E.2d 337.) We are of the opinion that the testimony of Johnson & Johnson employees that their duties were of a supervisory nature and that they did not order the foreman for United Piping not to re-erect the scaffold along with the testimony that United Piping's foreman directed his employees in their work and instructed them to use a ladder to reach the vacuum lines was sufficient to support the jury's verdict and special interrogatory. It is for the jury alone to determine the credibility of the witnesses and the weight of the evidence on controverted questions of fact. (*Brayfield v. Johnson*, 62 Ill. App. 2d 59, 210 N.E.2d 28.) The jury observed the demeanor of the witnesses, listened to their testimony and decided to accept Johnson & Johnson's version. We will not disturb those findings.

For the foregoing reasons, the judgment of the circuit court is affirmed.

Affirmed.

LORENZ, P. J., and DRUCKER, J., concur.