TED KATZ, Plaintiff-Appellee, *v*. SHAF HOME BUILDERS, INC., Defendant-Appellant.

First District (3rd Division)    No. 79-1299

Opinion filed March 11, 1981.

Pretzel, Stouffer, Nolan & Rooney, Chartered, of Chicago (Robert Marc Chemers and Joseph B. Lederleitner, of counsel), for appellant.

Davis S. Pochis, Ltd., of Chicago (Alan D. Katz and David S. Pochis, of counsel), for appellee.

Mr. JUSTICE McNAMARA delivered the opinion of the court:

Plaintiff, Ted Katz, brought this action pursuant to the Structural Work Act (Ill. Rev. Stat. 1973, ch. 48, pars. 60, 69) to recover damages arising from an incident which occurred while plaintiff was using a scaffold. Defendant, Shaf Home Builders, Inc., was the general contractor for the construction of a home, and it joined Sims Construction Company, a subcontractor and plaintiff's employer, as a third-party defendant seeking indemnity for Sims' alleged active negligence. Prior to trial, the trial court granted the motions of plaintiff and Sims to sever the third-party action. The jury returned a verdict in favor of plaintiff and against defendant in the amount of $260,000. The trial court entered judgment on the verdict and denied defendant's post-trial motion. On appeal defendant contends that the judgment is contrary to the manifest weight of the evidence, and that the trial court abused its discretion in severing defendant's third-party action against Sims. Plaintiff has filed a conditional cross-appeal, urging that the trial court erred in refusing to direct a verdict in his favor.

In June 1973, defendant was general contractor for the construction

of a number of homes in the Skokie area while Sims was a subcontractor. Plaintiff was employed by Sims as a carpenter and had worked on 10 to 12 homes in which defendant was the general contractor. On June 13, 1973, he was installing siding on a home under construction. Plaintiff testified that while he was on the scaffold, lifting a piece of siding and readying it to be nailed into the wall, the scaffold shifted to the left and pulled away from the wall. As a result, he fell seven feet and fractured his leg.

The scaffold in question was a single pole scaffold and consists of braces, ledges, brackets, a platform and a putlog. The latter is the part placed against the structure. The scaffold was built by Sims employees and was erected by plaintiff and another employee.

The Structural Work Act imposes liability on owners "in charge" of the construction who "wilfully" violate the provisions of the Act. Defendant apparently agrees that it was a factual question for the jury to determine whether defendant was in charge of the construction for the purposes of the Act. Defendant maintains, however, that the jury's determination that it "wilfully" violated the Act is against the manifest weight of the evidence.

■■ For the purposes of the Act, a wilful violation is committed when one knows of or when, in the exercise of reasonable care, one could have discovered the dangerous condition. (*Moore v. Clearing Industrial District, Inc.* (1978), 64 Ill. App. 3d 391, 380 N.E.2d 1063.) The question of wilfulness is primarily a factual one for the jury to decide. (*Ewert v. Wieboldt Stores, Inc.* (1980), 84 Ill. App. 3d 1008, 405 N.E.2d 1283.) When there is conflicting evidence presented on a factual issue, the reviewing court may not reweigh the evidence or assess the credibility of the testimony. *Warren v. Johnson & Johnson* (1976), 39 Ill. App. 3d 1029, 351 N.E.2d 415.

■■ The record discloses that there was sufficient evidence presented for the jury to conclude that a dangerous condition existed as to the scaffold, and that defendant either knew or should have known of that condition. Plaintiff presented expert testimony that a single pole scaffold with an unsecured putlog, and with a platform unsecured to that putlog, and without a platform under the A-frame, such as the scaffold upon which plaintiff worked, was unsafe. There was further expert testimony that there was insufficient diagonal bracing to prevent shifting, and that upon general inspection, these defects should have been apparent.

■■ Vance Shaf testified for defendant that either he or another superintendent for defendant visited the construction site once or twice a day. Ronald LeCompte, also a superintendent for defendant, testified that he was present on the morning of the incident. Plaintiff testified that one of defendant's inspectors or superintendents visited the work site twice on

the morning of the day of plaintiff's accident. During the second visit, defendant's employee stood two feet from the scaffold and touched it. As he touched the scaffold, it shook. Shortly after the second visit by defendant's representative, plaintiff removed the legs from the scaffold and moved the scaffold to the rear of the building. There, plaintiff reassembled the structure in a manner identical to the erection of the scaffold that morning and all during the construction. According to plaintiff, no representative of defendant visited the site between the time plaintiff moved the scaffold to the rear of the home under construction and plaintiff's injury which occurred a few hours later. Under all the evidence, the jury could have concluded that defendant as general contractor, despite its daily inspection, abandoned its duty to discover and correct defects in the scaffold which were readily apparent. Moreover, we reject the notion that the dismantling and re-erecting of the defective scaffold at the rear of the home negated any knowledge of its defects which was or should have been discovered by defendant's representative during his inspection on the morning of the accident. The jury reasonably could have concluded that an inspector who views a dangerous condition in the morning should know that the dangerous condition will persist. An owner who is in charge of construction may not escape liability by closing its eyes to the defect at the moment of the accident, if the evidence shows that ordinary care in inspection would have uncovered the defect. (*Pantaleo v. Gamm* (1969), 106 Ill. App. 2d 116, 245 N.E.2d 618.) There was sufficient evidence adduced to support the jury's determination that defendant's violation of the Act was wilful.

Defendant next contends that the trial court abused its discretion and prejudiced defendant by granting a severance of the third-party indemnity action over against Sims. Defendant cites the following as examples of the resultant prejudice to it: (1) plaintiff's counsel elicited on cross-examination of a Sims employee that a third-party action was pending; (2) the jury was instructed that contributory negligence is not a defense to liability under the Act; (3) the jury was instructed that defendant may be liable under the Act if it contributed in part to the injury; and (4) the trial court refused to give to the jury a special interrogatory tendered by defendant. Initially we fail to see how some of these occurrences resulted from the severance and ultimately, how any such results prejudiced defendant so as to deny it a fair trial.

■■ Section 51 of the Civil Practice Act (Ill. Rev. Stat. 1973, ch. 110, par. 51) authorizes the granting of a motion for severance and provides in part: "An action may be severed, * * * as an aid to convenience, whenever it can be done without prejudice to a substantial right." The granting of a motion for severance is within the broad discretion of the trial court, and this court will not reverse unless such discretion has been manifestly

abused. (*Rogala v. Silva* (1973), 16 Ill. App. 3d 63, 305 N.E.2d 571.) It is significant that defendant did not defend solely on the ground of Sims' liability over it. Instead, defendant also maintained that it was wholly free from liability under the Act. Thus, in the event that the jury decided in favor of defendant on this issue, any third-party action would have been rendered moot. Consequently, the trial court's grant of the severance could have saved a substantial amount of time and expense for all parties.

■■■ Nor was defendant prejudiced by severance of the actions. When Sims' representative took the stand in defendant's behalf, it was proper for plaintiff's counsel on cross-examination to elicit the existence of the third-party action to show interest or bias. (*Reese v. Chicago, Burlington & Quincy R.R. Co.* (1973), 55 Ill. 2d 356, 303 N.E.2d 382; *Gatto v. Curtis* (1972), 6 Ill. App. 3d 714, 286 N.E.2d 541.) Moreover, any prejudicial effect of such impeachment could have been obviated by a request for a limiting instruction to the jury at the time. (*Reese v. Chicago, Burlington & Quincy R.R.*) Having failed to request such an instruction, the issue is waived on review.

■■ The trial court correctly stated the law under the Act when he instructed the jury that contributory negligence is no defense. (*Ewert v. Wieboldt Stores, Inc.*) Defendant was not prejudiced by the giving of this instruction.

■■ ■ Nor was defendant prejudiced by the giving of the following instruction to the jury:

> "More than one person may be to blame for causing an injury. If you decide that the plaintiff has proved all the propositions of his case, then it is not a defense to plaintiff's claim that plaintiff's employer may also have been to blame."

This instruction merely states the law that there may be more than one proximate cause of an injury, and that liability attaches under the Act even if defendant contributed only in part to the injury (*Ewert v. Wieboldt Stores, Inc.*), as well as the law that more than one person may be deemed liable under the Act. (*Miller v. DeWitt* (1967), 37 Ill. 2d 273, 226 N.E.2d 630.) The instruction was proper whether or not severance had been granted.

■■ Defendant finally contends that the severance prejudiced it by causing the trial court to refuse to submit the following special interrogatory to the jury:

> "Was the sole proximate cause of the occurrence in question and the injury to the plaintiff something other than a violation of the Structural Work Act by the defendant?"

We note that defendant has not raised the propriety of the trial court's refusal as an independent assignment of error. Instead, it is cited as an example of how defendant was prejudiced by the severance. We are

unable to see how the trial court's refusal to give this interrogatory can be connected to its decision to grant the severance. In any event, the trial court properly refused to give the special interrogatory to the jury because its language, particularly the use of the phrase "something other," could have only been confusing to the jury. *Lau v. West Towns Bus Co.* (1959), 16 Ill. 2d 442, 158 N.E.2d 63; *Saldana v. Wirtz Cartage Co.* (1977), 55 Ill. App. 3d 440, 370 N.E.2d 1131.

In view of our holding, it is unnecessary to consider plaintiff's cross-appeal.

For the reasons stated, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

McGILLICUDDY and WHITE, JJ., concur.