THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* GEORGE R. PHILLIPS, Defendant-Appellant.

First District (4th Division)   No. 80—1196

Opinion filed December 9, 1982.

Steven Clark and Bruce Mosbacher, both of State Appellate Defender's Office, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat and Joel A. Stein, Assistant State's Attorneys, of counsel), for the People.

JUSTICE LINN delivered the opinion of the court:

Defendant, George Phillips, was charged by indictment with the murder of Dean Terrill. Following a bench trial in the circuit court of Cook County, defendant was convicted of murder and sentenced to a term of 100 to 200 years in the penitentiary.

On appeal, defendant claims (1) that he was denied his due process rights when the trial court failed to instruct the jury at defendant's fitness restoration hearing that the State bore the burden of proving defendant fit for trial; (2) that the jury at the fitness restoration hearing should have been instructed that defendant was presumed unfit on the strength of an earlier finding of incompetence; (3) that the trial court committed reversible error by failing to order a competency hearing prior to the hearing on defendant's motion to suppress statements despite notice of a *bona fide* doubt of defendant's fitness; (4) that defendant's confessions were admitted into evidence

in violation of his constitutional rights; (5) that defendant was deprived of effective assistance of counsel; (6) that the trial court's erroneous explanation of the factors justifying an extended term sentence prevented defendant from making a knowing and intelligent choice between alternative sentencing provisions; and (7) that the trial court abused its discretion by imposing a sentence of 100 to 200 years.

We affirm the decision of the trial court.

FACTS

On November 23, 1973, Detective Douglas Moss of the Brunswick, Georgia, police department was called to the scene of an unsuccessful burglary attempt and saw defendant lying on the floor, surrounded by paramedics. After defendant received emergency medical care for two gunshot wounds he had sustained, Moss advised him of his constitutional rights and placed him under arrest. Defendant was then taken immediately to the local hospital for further treatment. Upon returning to his office, Moss checked defendant's name and description against a national computerized list of outstanding warrants and learned that defendant was wanted in Cook County, Illinois.

On the following day, November 24, 1973, defendant informed hospital personnel that he wanted to speak with Moss. When Moss arrived at the hospital, he informed defendant that burglary and aggravated assault charges had been filed against him. After the detective again advised defendant of his rights and reminded him that he need not volunteer any information, defendant told Moss that he had murdered an attorney named Dean Terrill in Chicago. This conversation was the first indication that defendant was involved in an unsolved murder dating back to May 2, 1972. Although Moss took notes of this first statement by defendant, he testified that he did not transcribe them because defendant might have been on medication and the statement therefore inadmissible at a future trial.

Upon his release from the hospital the next day, defendant was brought to the Brunswick police station, where he was advised of his constitutional rights before he voluntarily signed a waiver form. He then gave a second statement concerning the murder of Dean Terrill. Defendant subsequently spent almost six months in the Georgia State Penitentiary for burglary and aggravated assault before being extradited to stand trial in Illinois. During the various stages of the trip to Chicago, including an airport layover and a three-hour flight during which both defendant and the two accompanying officers consumed some alcoholic beverages, defendant repeatedly brought up the subject of Terrill's murder. After the officers advised defendant of his

rights, while on the plane he made a third statement about the murder.

When the three men arrived in Chicago, defendant was taken first to the scene of the murder and then to the Area 6 Homicide office, where he made and signed his fourth statement after being advised of his rights and signing a waiver form. On June 3, 1974, defendant was indicted for the murder of Dean Terrill. He immediately filed a motion for a court-ordered psychiatric examination.

The first examination, which took place on July 25, 1974, was conducted by Dr. E. J. Kelleher, Director of the Psychiatric Institute of Cook County. Defendant was found fit to stand trial. Two weeks later, on August 15, 1974, defendant moved to be examined by another psychiatrist, Dr. Werner Tuteur; although the examination was conducted, no report was filed with the court. Three months later, defendant requested a competency hearing, and a re-examination by Dr. Tuteur was ordered; again no report was filed.

Defendant then filed a motion to suppress the four statements he had made prior to indictment. Following another psychiatric examination that indicated he was fit for trial, the hearing on the motion to suppress was held in August 1975 and the motion was denied.

During the next 15 months, defendant was granted four more psychiatric examinations. Although one doctor, Dr. Tuteur, consistently found him unfit to stand trial, a series of doctors from the Psychiatric Institute of Cook County all found defendant to be a "malingerer," a "faker" of symptoms, and quite competent to stand trial despite the toothpicks he habitually put through his nose and ears and the "666" he had tattooed above his nose. At his November 1976 fitness hearing, defendant was found unfit to stand trial and was remanded to the custody of the Department of Mental Health for treatment.

During the ensuing 15 months, defendant requested and was granted four more psychiatric examinations by Institute psychiatrists, all of whom reported him to be competent. As a result, the State requested and was granted a fitness restoration hearing, which was held on February 15, 1978. After hearing psychiatric evidence from several doctors, the jury found defendant competent to stand trial for murder.

When trial commenced on August 28, 1978, the State introduced only two of the four confessions, those given at the Brunswick and Chicago police stations, and used them to establish the circumstances of the confrontation between defendant and Dean Terrill that led to the attorney's death. One version described a short but initially

friendly conversation between the two men, while the second version described defendant as masked from the moment Terrill opened the door. Despite the inconsistencies in the narratives of the planning and subterfuge used to get into the attorney's apartment, the descriptions of the actual killing were the same: defendant had borrowed a gun before going to Terrill's apartment, gained entry through a ruse, beat Terrill with the handle of the gun, and then chased him through the apartment, stabbing him with a knife until a severe wound to the throat caused asphyxiation. Defendant then took $21 from the body, left the apartment, and went home. In both versions defendant related that he consciously decided not to shoot Terrill because of fear that the noise would lead to his discovery.

In response, the defense presented no witnesses, but instead entered into the record the stipulated testimony of Dr. Tuteur. The doctor's report stated that although he could not reach a definite conclusion about defendant's sanity at the time of the murder, it was his opinion that defendant suffered from a schizophrenic illness of lengthy duration that "in all probability" existed prior to the murder. The State's rebuttal consisted of stipulated testimony by an Institute psychiatrist stating that his review of defendant's medical and psychiatric records led him to conclude that at the time of the murder defendant appreciated the criminality of his actions and could have conformed his conduct to the requirements of the law. Both sides then waived closing argument, and the trial court found defendant guilty of murder.

At the sentencing hearing, defendant was informed that because the applicable sentencing provisions had been amended between the date of the murder and the date of trial, he had the option of choosing between the two sentencing schemes. After the court explained the differences between the two provisions, defendant consulted with his attorney and chose to be sentenced under the earlier statute. The State argued in aggravation that the murder not only had occurred during a premeditated armed robbery, but also was characterized by wanton violence and cruelty. Defendant had an extensive criminal background, including convictions of aggravated assault, criminal trespass to a vehicle, possession of narcotics, multiple convictions of theft and burglary, and parole violations. In mitigation, the defense reminded the court of the defendant's social background, childhood deprivations, and long-term emotional problems. The trial court, after noting that defendant was a dangerous person lacking rehabilitative potential, sentenced defendant to a term of not less than 100 nor more than 200 years in the Illinois Department of Corrections.

OPINION

## I

Defendant first claims that the trial court erred by failing to instruct the jury at defendant's fitness restoration hearing that the State bore the burden of proving defendant competent to stand trial. (Ill. Rev. Stat. 1977, ch. 38, par. 1005—2—1(i).) We initially note that by failing either to tender an alternate instruction or to object to the instruction as given, defendant has waived the right to raise the issue on appeal unless the omission amounts to plain error. (*People v. Garza* (1981), 92 Ill. App. 3d 723, 415 N.E.2d 1328; 73 Ill. 2d R. 615(a).) "It is the rare case in which an improper instruction will justify reversal of a criminal conviction when no objection has been made in the trial court." *Henderson v. Kibbe* (1977), 431 U.S. 145, 154, 52 L. Ed. 2d 203, 212, 97 S. Ct. 1730, 1736.

Our review of the record demonstrates that not only was the jury properly instructed that the State bore the burden of proving defendant fit for trial by a preponderance of the evidence, but also that the State met its burden. The waiver exception here argued by defendant is applicable only "to correct 'grave errors' " or where the evidence is closely balanced. (*People v. Roberts* (1979), 75 Ill. 2d 1, 14, 387 N.E.2d 331, 337.) Defendant claims that the portion of the instruction directing the jury to find defendant unfit if the defense had proved that fact by a preponderance of the evidence was just such a "grave error" in that the burden of proof was unconstitutionally shifted to the defense. *People v. McCullum* (1977), 66 Ill. 2d 306, 362 N.E.2d 307.

■ The cases cited by defendant to support his claim that reversal is required were decided under a statute that placed on a defendant the burden of proving his own unfitness. (Ill. Rev. Stat. 1975, ch. 38, par. 1005—2—1(i).) The amendment of the statute in 1977 made it clear that the State always bears the burden of proving fitness. (Ill. Rev. Stat. 1977, ch. 38, par. 1005—2—1(i).) Therefore, the earlier, reversed decisions reflected either a specific instruction that defendant bore the evidentiary burden or a presumption that the trial judge had followed the unconstitutional statute. (See *People v. Thompson* (1978), 60 Ill. App. 3d 198, 376 N.E.2d 442; *People v. Hubert* (1977), 51 Ill. App. 3d 394, 366 N.E.2d 909.) Here, the jury was properly instructed that defendant could be found fit only if the State had proved that fact by a preponderance of the evidence. Although we agree that omission of the second portion of the instruction would have been preferable, the additional information did not unconstitutionally shift the burden of proof to defendant. Also, the opening and closing state-

ments by both prosecution and defense reflect the recognition that the burden of proof was on the State. Accordingly, we find no plain error in the instruction given.

▮▮ Defendant also cites *People v. Roberts* (1979), 75 Ill. 2d 1, 387 N.E.2d 331, to support his claim that the closely balanced evidence at the hearing requires application of the rule of waiver even though no objection was raised before the trial court and no alternative instruction was tendered. Our examination of the record, however, establishes that defendant's claim that the evidence was closely balanced is without support. The State presented Drs. Kaplan and Reifman to testify to defendant's competence. In addition, several other reports of court-ordered examinations had consistently confirmed defendant's competence. In contrast, the defense presented its case for unfitness through the testimony of Dr. Tuteur, the only doctor to find defendant incompetent at any point during the lengthy process from indictment to trial. Further, Dr. Tuteur mitigated the effect of his own testimony by stating that his opinion of defendant's mental condition would not change even if he learned that defendant had consciously controlled his behavior to simulate unfitness. Under such circumstances, defendant cannot claim that the evidence was so closely balanced that the rule of waiver should be applied to correct defense counsel's failure to raise any objection at the hearing. We therefore hold that defendant has waived his right to claim reversible error based on faulty jury instructions.

## II

▮▮ ▮ The second error claimed by defendant to necessitate reversal was the failure of the State to instruct the jury at the fitness restoration hearing that because defendant had been found unfit 1½ years earlier, the presumption of incompetence continued. Defendant argues that *People v. Rangel* (1982), 104 Ill. App. 3d 695, 432 N.E.2d 1141, supports his claim that a presumption of incompetence continues if the mental illness is continuing and the prior adjudication is not too remote. (*People v. Barkan* (1970), 45 Ill. 2d 261, 259 N.E.2d 1.) What defendant failed to note, however, was that, absent these two circumstances, not only is a jury at a restoration hearing not told of the prior adjudication, but no restoration hearing need be held *at all*. (See *People v. Santoro* (1973), 13 Ill. App. 3d 426, 301 N.E.2d 175 (abstract of opinion).) The only function of a restoration hearing is to determine whether the case presented by the State establishes by a preponderance of the evidence that a defendant is currently fit for trial; presumptions arising from past adjudications have no impact on

the hearing other than to ensure that the restoration hearing itself is held before a defendant may be tried. We therefore find no error in the failure to instruct the jury at the restoration hearing that defendant was presumed incompetent.

## III

Defendant next claims that the trial court erred in not holding a fitness hearing prior to the hearing on the motion to suppress his four confessions despite notice of a *bona fide* doubt of his competency. (Ill. Rev. Stat. 1977, ch. 38, par. 1005—2—1(c).) Because no fitness hearing was held until after the suppression hearing, defendant argues that a new suppression hearing should have been held before trial began. We find defendant's argument devoid of merit.

In Illinois, a defendant has the mental capacity to stand trial if he understands the nature and purpose of the proceedings against him and can cooperate with his counsel in conducting his defense in a reasonable, rational manner. (*People v. Hammond* (1970), 45 Ill. 2d 269, 259 N.E.2d 44; Ill. Rev. Stat. 1977, ch. 38, par. 1005—2—1(a).) If a *bona fide* doubt exists concerning a defendant's fitness to stand trial or to be sentenced, "the court shall order that a determination of that question be made before further proceedings." (Ill. Rev. Stat. 1977, ch. 38, par. 1005—2—1(c).) However, the court must order a fitness hearing only when facts raising a *bona fide* question of a defendant's fitness are brought to its attention. (*People v. Foster* (1979), 76 Ill. 2d 365, 392 N.E.2d 6.) As recently affirmed in *People v. Jones* (1982), 109 Ill. App. 3d 120, 440 N.E.2d 261, neither the necessity for psychiatric treatment nor even prior commitment to a mental hospital necessarily raises a *bona fide* doubt of his ability to understand the proceedings or to assist in his defense. Here, the only notice given to the court before the hearing on the motion to suppress was one sentence in the petition for a competency hearing, an unsupported claim by defense counsel that a Dr. Tuteur had found defendant unfit for trial. As noted earlier, no report from Dr. Tuteur had been filed with the court, so at the time of the hearing on the motion to suppress, the only evidence before the trial court consisted of a series of reports affirming defendant's competency.

Whether a *bona fide* doubt has been raised is a matter committed to the sound discretion of the court, and a reviewing court will not disturb the trial court's determination of that question absent a clear abuse of that discretion. (*People v. Pridgen* (1967), 37 Ill. 2d 295, 226 N.E.2d 598.) A mere assertion by defense counsel that he has reason to believe defendant is incompetent is insufficient to create

a *bona fide* doubt of defendant's fitness. (*People v. Foster* (1979), 76 Ill. 2d 365, 392 N.E.2d 6; *People v. Slaughter* (1970), 46 Ill. 2d 114, 262 N.E.2d 904.) We agree with the State that the court was well within its discretion in deciding that no *bona fide* doubt of defendant's fitness had as yet been raised.

Our review of the record discloses that at no time before, during, or after the suppression hearing did defendant ever suggest that a fitness hearing should have preceded the suppression hearing. Further, and more important, the record in no way supports defendant's claim that the court had a *bona fide* doubt of his competence before the suppression hearing. Although defendant had been examined twice by Dr. Tuteur and apparently found unfit both times, neither of those reports had been filed with the court. The only psychiatric reports before the court at the time of the suppression hearing were the three reports by Drs. Kelleher and Rappaport of the Psychiatric Institute maintaining that defendant was fit. Not until 14 months after the suppression hearing did defendant file Dr. Tuteur's adverse report. Therefore, because no *bona fide* question of defendant's competence had been brought to the attention of the court, we agree with the prosecution that no fitness hearing was necessary prior to the suppression hearing. *People v. Dominique* (1980), 86 Ill. App. 3d 794, 408 N.E.2d 280.

## IV

Defendant next argues that the trial court erred in denying his motion to suppress his confessions because they were neither voluntary nor made after a knowing and intelligent waiver of his rights. We find no merit in this claim.

Even a cursory review of the record discloses that defendant initiated all conversations concerning the murder and that the first confession came as a complete surprise to the Brunswick police officer defendant had summoned. Further, defendant was repeatedly admonished regarding his constitutional rights each time he began to speak about the murder, and each time he knowingly and voluntarily waived them. As in *People v. Kraman* (1981), 96 Ill. App. 3d 390, 400, 421 N.E.2d 346, 354, the "police did not initiate any questioning but only responded with questions to defendant's volunteered statements. Defendant himself 'let the cat out of the bag.' " A confession is properly admissible if it does not appear to the trial court that the defendant's will was overborne prior to or at the time of the statement. (*People v. Lewis* (1979), 75 Ill. App. 3d 259, 393 N.E.2d 1098.) We find nothing in the record to indicate that defend-

ant's will was overborne in any way.

Although defendant moved to suppress all four confessions, he does not maintain that the second and fourth statements, the only two used at trial, were in themselves involuntary. Instead, he attempts to disqualify them on the ground that they were each "fruit of [a] poisonous tree" (*Nardone v. United States* (1939), 308 U.S. 338, 341, 84 L. Ed. 307, 312, 60 S. Ct. 266, 268), namely, the first and third confessions respectively. Defendant argues that because his first confession was rendered involuntary by medication and the third by liquor, the confessions subsequent to each must be suppressed. We find defendant's argument to be without merit.

■■■ ■ A statement made by a defendant taking medication will be considered involuntary only if the subsequent statement "is, *in fact*, induced by the administration of a drug." (*People v. Kincaid* (1981), 87 Ill. 2d 107, 117, 429 N.E.2d 508, 511.) Even if the officer hearing the first statement in the hospital *believed* that possible medication might render the statement inadmissible at trial, that belief is irrelevant to the question whether the statement was *in fact* voluntary and properly admissible at trial. (87 Ill. 2d 107, 429 N.E.2d 508.) Further, the extension of the effect of possible medication to a second confession is unsupportable given the facts in the instant case. Consequently, we find the trial court properly denied defendant's motion to suppress his first and second confessions.

On the other hand, defendant moved to suppress his third and fourth confessions on the ground that the third was the product of intoxication; indeed, defendant claims the two officers accompanying him from Georgia to Chicago actually "administered" the alcohol as part of a plan to make him confess. Such an accusation is unsupportable. "[I]n cases where the evidence plainly demonstrates that a suspect is so grossly intoxicated that he no longer has the capacity to knowingly waive his rights, suppression of any statements made while he was in such condition is warranted." (*People v. Moon* (1976), 38 Ill. App. 3d 854, 860, 350 N.E.2d 179, 183.) However, where, as here, evidence of "such gross intoxication" is less than clear, the fact that the suspect has been drinking "does not make his confession inadmissible but goes only to the weight to be accorded it." (38 Ill. App. 3d 854, 860, 350 N.E.2d 179, 183.) As we decided concerning the first and second confessions, the extension of the effect of possible intoxication from the third to the fourth confession has no basis in fact.

In the case of both drugs and alcohol, self-administered or not, the sole question is whether defendant's waiver of his rights was the exercise of a free and rational will. That question is one of fact, and

"[i]t is for the [trier of fact] alone to determine the credibility of the witnesses and the weight of the evidence on controverted questions of fact." (*Warren v. Johnson & Johnson* (1976), 39 Ill. App. 3d 1029, 1034, 351 N.E.2d 415, 419.) "In nonjury cases the credibility of the witnesses and the weight afforded their testimony are questions to be determined by the trial court, and a reviewing court will not substitute its judgment *** unless the findings of the trial court are against the manifest weight of the evidence." *Guzell v. Kasztelanka Cafe & Restaurant, Inc.* (1980), 87 Ill. App. 3d 381, 385, 408 N.E.2d 1124, 1127.

In the instant case, there was no evidence that defendant was intoxicated at the time of his third confession. Even when there is conflicting evidence concerning a defendant's intoxication, the trial court may properly find the statement to be "the product of a rational intellect and free will." (*People v. Kelley* (1973), 10 Ill. App. 3d 193, 195, 293 N.E.2d 158, 162.) Consequently, we find no error in the trial court's refusal to suppress defendant's third and fourth confessions.

V

Defendant next claims that he was denied his constitutional right to a fair trial because of the ineffective assistance of his counsel. A review of the conduct of defense counsel at trial, however, demonstrates that defendant received effective representation as far as the facts of the case permitted. It appears clear to us that what defendant is arguing is that merely because his appointed counsel did not prevail at trial, counsel was ineffective.

A defendant, while entitled to assistance of counsel, "is entitled to competent, not perfect or successful, representation." (*People v. Murphy* (1978), 72 Ill. 2d 421, 438, 381 N.E.2d 677, 685.) "The inadequacy of a defendant's trial counsel entitles him to a new trial if his appointed counsel was actually incompetent, as reflected in the performance of his duties as trial attorney, and if this incompetence produced substantial prejudice to the defendant without which the result of the trial would probably have been different." (*People v. Greer* (1980), 79 Ill. 2d 103, 120-21, 402 N.E.2d 203, 211.) However, appellate review of a defendant's representation does not extend to matters involving the exercise of judgment, discretion, or trial tactics; "errors in judgment or trial strategy do not establish incompetency." *People v. Murphy* (1978), 72 Ill. 2d 421, 437, 381 N.E.2d 677, 685.

The record fully demonstrates that defendant's counsel ably pursued all available avenues and defenses. The fact that counsel was

unsuccessful is merely a reflection of the evidence, not counsel's incompetence. Defendant has failed to present one example of so-called incompetence that, if changed, would have changed the result of the trial. Accordingly, we hold that defendant was not denied his right to effective assistance of counsel.

## VI

■■■ Defendant's final claim of error focuses on the procedures followed during the sentencing hearing and the term of imprisonment to which defendant was sentenced. Our review of the record and of the factors in aggravation and mitigation argued at the sentencing hearing has convinced us that not only was defendant correctly informed of the differences between the current and former sentencing provisions, he had the specific advice of counsel before he exercised his option to be sentenced under the statute in effect at the time of the offense rather than the amended statute in effect at time of trial. (Ill. Rev. Stat., 1978 Supp., ch. 38, par. 1008—2—4(b).) It is the duty of defense counsel, not the trial judge, to explain the possible alternative sentences to the defendant; consequently, the trial court's mistaken explanation of the factors that would justify imposition of an extended term under the amended statute does not warrant vacating defendant's sentence. (*People v. Cross* (1980), 84 Ill. App. 3d 868, 406 N.E.2d 66.) We particularly note that while the judge listed as justification for imposing an extended term several factors that do not so operate, he did inform defendant of the two factors that do justify an extended term. Overexplanation hardly entitles defendant to a re-election and resentencing, especially when he fully consulted with counsel before making his unambiguous election. (84 Ill. App. 3d 868, 871, 406 N.E.2d 66, 69.) Finally, as noted in *People v. Kurena* (1980), 87 Ill. App. 3d 771, 781, 410 N.E.2d 277, 286, defendant's decision to be sentenced in accord with the former statute leaves no "serious doubts as to [the] validity of his choice for he chose the law with the lesser minimum sentence." Accordingly, we find no reversible error in the trial court's explanation of the two sentencing alternatives.

■■■ Last, defendant complains that his indeterminate sentence of 100 to 200 years is excessive. We initially note that it is not the function of a reviewing court to serve as a sentencing court; absent a clear abuse of discretion by the trial court, a sentence must not be disturbed on review. (*People v. Cox* (1980), 82 Ill. 2d 268, 412 N.E.2d 541.) The trial court, which is charged with the fashioning of a sentence that strikes the appropriate balance between protection of society and rehabilitation of the offender, is in the best position to deter-

mine the appropriate sentence. 82 Ill. 2d 268, 279-80, 412 N.E.2d 541, 547.

At the sentencing hearing, the trial court carefully considered all relevant factors in aggravation and mitigation before imposing sentence. Because defendant at age 19 had already been convicted of several crimes, had refused to cooperate in the preparation of the presentence investigation report, and had carefully prepared for the crime, we find the sentence to be well within the bounds of sound judicial discretion. Indeed, the trial court, noting that defendant himself confessed that he had stabbed Terrill until "he bleed like a stuck pig," described the crime as "viciously executed" and "willful and wanton and cruel in nature." The court then concluded,

> "In view of George Phillips' background, the nature and circumstances of the crime and the conduct of George Phillips, that he is a very dangerous person; that he lacks rehabilitative potential, and he should never be allowed to walk the streets of our society again."

■■■ We recognize, as did the trial court, that defendant's "brutal or heinous behavior indicative of wanton cruelty" would justify a sentence of natural life imprisonment under the amended sentencing code. (Ill. Rev. Stat., 1978 Supp., ch. 38, par. 1005—8—1(a)(1).) Consequently, the trial judge properly determined that a sentence of 100 to 200 years would be appropriate. We find no abuse of discretion in this determination and therefore will not disturb the sentence on review.

Finding no error, we affirm the decision of the trial court.

Affirmed.

JOHNSON, P.J., and JIGANTI, J., concur.