THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. STEVEN BROWN, Defendant-Appellant.
First District (4th Division) No. 1—91—0999

Opinion filed August 12, 1993.

Rita A. Fry, Public Defender, of Chicago (Millicent Willis, Assistant Public Defender, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Matthew L. Moodhe, and Jillian Cerone-Marisie, Assistant State's Attorneys, of counsel), for the People.

JUSTICE HOFFMAN delivered the opinion of the court:

The defendant, Steven Brown, appeals from a jury verdict finding him guilty of murder (Ill. Rev. Stat. 1985, ch. 38, par. 9—1(a)(1)) but mentally ill. He raises the following issues: (1) whether the trial judge improperly shifted the burden of proof to the defendant during the fitness restoration hearing, erroneously relied on the presumption of fitness, and abused his discretion in finding that the defendant was fit to stand trial; (2) whether the prosecutor's alleged improper closing argument amounted to plain error; (3) whether the alleged ineffective assistance of counsel, for failure to move to suppress the defendant's statement and object to closing arguments, rose to the level of plain

error; and (4) whether the judge abused his discretion when he sentenced the defendant. For the following reasons, we affirm.

The defendant's father, Lee Brown, was found dead of multiple stab wounds on October 17, 1986, outside a store that he owned. During the investigation of the murder, the defendant gave a statement to police and he was subsequently charged with two counts of murder (Ill. Rev. Stat. 1985, ch. 38, pars. 9—1(a)(1), (a)(2)).

Prior to trial, the judge ordered a psychiatric examination of the defendant. After a fitness hearing held on February 4, 1987, the judge found that the defendant was unfit to stand trial and committed him to the Department of Mental Health. Because there was a substantial probability that with treatment the defendant would attain fitness within one year, several other hearings were held to determine the defendant's fitness to stand trial. On December 11, 1987, he was found fit for trial, on August 16, 1988, he was found unfit, and on March 21, 1989, he was again found fit for trial.

Subsequently, in a letter to the trial judge, Dr. Matthew S. Markos, a psychiatrist, reported his findings after examining the defendant on December 6, 1989. He found that the defendant was fit to stand trial with medication. Markos was unable to give an opinion on the defendant's sanity at the time of the offense because the defendant would not cooperate.

Dr. Albert H. Stipes, a psychiatrist, examined the defendant on March 30, 1990, and in a letter to the trial judge reported that he also found the defendant was fit to stand trial.

Although the defendant was found fit to stand trial in the previous fitness hearing, another hearing was held on May 8, 1990, to again determine whether he was fit to stand trial. Prior to hearing testimony, the defendant's attorney agreed with the trial judge that the defense had the burden of proof. The defense presented three witnesses.

Scott Rosenthal, a psychiatric social worker for the Cook County jail, testified that he had weekly therapy sessions with the defendant for 2½ years. During the previous four or five months, the sessions were limited because the defendant was withdrawn and was not willing to discuss his problems.

Dr. Markos testified that he examined the defendant on December 6, 1989, and found that he was fit to stand trial while taking medication.

The defendant testified that his name was not Steven Brown and the victim was not his father. When asked about his discussions with his attorneys, he testified that they believed he was guilty and tried

to coerce him into admitting that he committed the offense. He told his attorneys that he was willing to cooperate but they "continue[d] to do all the talking."

The State did not present evidence at the hearing and moved for a directed finding. The trial judge noted that the defendant was presumed to be fit for trial. The judge stated, "I find there is nothing in this record, looking at the evidence in a light most favorable to the moving party Petitioner, Mr. Brown, that from a *bona fide* standpoint militates against the presumption of fitness." Based on the testimony presented and Dr. Markos' opinion of December 6, 1990, the judge granted the State's motion and found that the defendant was fit to stand trial.

In a jury trial, Detective Barry Costello testified that he interviewed the defendant during his investigation of the murder. The defendant's mother and sister told him that the defendant had a mental problem. The defendant was given *Miranda* warnings and stated that he understood. Initially, the defendant did not admit his involvement in the murder. Costello testified that in a subsequent interview, the defendant was "a little" nervous and upset but Costello understood him. The defendant told Costello that he went to his father's store on October 17, 1986, and asked for money. When his father called him a drunk and a drug addict, the defendant stabbed him numerous times with a pair of scissors.

Later, with an assistant State's Attorney present, the defendant was again read his *Miranda* rights, indicated that he understood, and a court reporter recorded his statement. The assistant State's Attorney testified that the defendant did not exhibit signs of mental illness.

Dr. Eupil Choy performed an autopsy on the victim and testified that he died as a result of 36 stab wounds to the face, neck, and body. The State rested its case.

The defense called Barbara Brown, the defendant's mother, who testified that she first realized the defendant was mentally ill when he was 17 years old and required hospitalization. He has been hospitalized frequently since that time.

Dr. Markos testified that he examined the defendant several times to determine his fitness for trial and his sanity at the time of the offense. Markos diagnosed the defendant as a paranoid schizophrenic, but with medication, the defendant was in partial remission. He was unable to form an opinion as to the defendant's sanity at the time of the offense because the defendant would not cooperate.

Dr. Gerson Kaplan, a forensic psychiatrist, also testified that he examined the defendant several times. Based on the examinations, he

diagnosed the defendant as a schizophrenic. Dr. Kaplan found that the defendant was legally insane at the time of the offense. The defense rested.

In rebuttal, the State called Dr. Stipes, a psychiatrist, who testified that he examined the defendant to determine whether he was sane at the time of the crime. He found that the defendant suffered from paranoid schizophrenia which was in remission due to medication. He also found that based on the police reports and the defendant's statement, the defendant was sane at the time of the offense because he was logical and coherent and because he gave a reasonable motivation for the murder which was anger.

After deliberating, the jury found the defendant guilty of murder but mentally ill and he was sentenced to 32 years in the mental health unit of the Department of Corrections. The defendant's post-trial motion was denied and he now appeals.

OPINION

I

The defendant raises several arguments concerning the trial judge's finding that he was fit to stand trial. He contends that during the restoration hearing the judge improperly shifted the burden to the defendant to prove that he was unfit, erroneously relied on the presumption of fitness, and abused his discretion in finding the defendant was fit to stand trial.

A defendant is presumed to be fit to stand trial. (Ill. Rev. Stat. 1989, ch. 38, par. 104—10.) When a *bona fide* doubt of a defendant's fitness is raised, the trial judge shall conduct a hearing during which the State has the burden of going forward with evidence and proving by a preponderance that the defendant is fit to stand trial. (Ill. Rev. Stat. 1989, ch. 38, pars. 104—11(a), (c); *People v. Murphy* (1987), 160 Ill. App. 3d 781, 513 N.E.2d 904.) A defendant is unfit if he is unable to understand the nature and purpose of the proceedings against him or assist in his defense because of a mental or physical condition. (Ill. Rev. Stat. 1989, ch. 38, par. 104—10.) If a defendant is found unfit and treatment has been ordered, the judge must periodically review the issue of fitness to stand trial. (Ill. Rev. Stat. 1989, ch. 38, par. 104—20(a).) If the judge subsequently finds that the defendant is fit for trial, he should set the matter for trial. (Ill. Rev. Stat. 1989, ch. 38, par. 104—20(b).) The judge's finding on whether a defendant is fit to stand trial will not be reversed on appeal unless it was a clear abuse of discretion. *Murphy*, 160 Ill. App. 3d 781, 513 N.E.2d 904.

The defendant relies on *Murphy* to support his arguments. In *Murphy*, the appellate court stated that if a trial judge in his discretion determines that a *bona fide* doubt of fitness is raised, "the presumption [of fitness] 'bubble' bursts and a hearing must be held." (*Murphy*, 160 Ill. App. 3d at 793, 513 N.E.2d at 912, quoting *People v. Burnside* (1977), 52 Ill. App. 3d 524, 528, 367 N.E.2d 733.) The holding of a fitness hearing " 'presupposes' the 'raising' of the required doubt and *** whether the doubt is *'bona fide'* is relevant only to the *initial* determination to hold a fitness hearing." (Emphasis in original.) (*Murphy*, 160 Ill. App. 3d at 793, 513 N.E.2d at 913.) Because the State has the burden of going forward with evidence and proving the defendant is fit by a preponderance of the evidence, the court found that requiring the defendant to proceed with evidence first resulted in an improper shifting of the burden of proof contrary to the statute. The court granted the defendant a new fitness hearing and, if found fit for trial, a new trial.

■ The defendant in this case contends that based on *Murphy*, the judge improperly shifted the burden of proof and required him to prove that he was unfit for trial. Although the State argues that the trial judge's comments did not indicate that the burden was on the defense, it is clear from the record that the judge believed the defendant had the burden of proof. The State has the burden in a restoration hearing of proving the defendant is fit for trial by a preponderance of the evidence. (*People v. Ralon* (1991), 211 Ill. App. 3d 927, 570 N.E.2d 742; *People v. Phillips* (1982), 110 Ill. App. 3d 1092, 443 N.E.2d 655.) However, reversible error did not occur here. Unlike *Murphy*, the defendant in this case was found fit for trial in a prior restoration hearing on March 21, 1989. The defendant does not claim any error occurred in that hearing. Further, the evidence presented at the restoration hearing on May 8, 1990, clearly established that the defendant was fit for trial. Dr. Markos testified that the defendant was fit for trial while on medication. No other expert testimony was presented. The defendant's testimony was coherent although he expressed some dissatisfaction with his attorneys. For these reasons, the trial judge's belief that the defendant had the burden of proof did not amount to reversible error.

■ The defendant also argues that under *Murphy*, the holding of a fitness hearing shows that there was a *bona fide* doubt as to his fitness and the judge could not rely on the statutory presumption of fitness to find that he was fit for trial. As stated in *Murphy*, once a *bona fide* doubt of the defendant's fitness is raised, there is no longer a presumption of fitness. However, *Murphy* discussed the presump-

tion issue in the context of the initial fitness hearing. When a defendant is found unfit, a presumption of unfitness is raised if the mental illness is continuing and the prior adjudication is not too remote; the presumption remains until there is a subsequent adjudication of fitness in a valid hearing. (*People v. Barkan* (1970), 45 Ill. 2d 261, 259 N.E.2d 1; *Phillips*, 110 Ill. App. 3d 1092, 443 N.E.2d 655; *People v. Greene* (1981), 102 Ill. App. 3d 639, 430 N.E.2d 219.) In this case, there was a subsequent adjudication of fitness in a valid hearing on March 21, 1989, and therefore, any presumption of unfitness was extinguished. Further, after that hearing both Dr. Markos and Dr. Stipes examined the defendant and reported to the trial judge that the defendant was fit to stand trial. As a result, under the circumstances it was within the trial judge's discretion to consider that there was no longer a *bona fide* doubt of the defendant's fitness in the restoration hearing on May 8, 1990.

■ The defendant also asserts that the trial judge abused his discretion in finding he was fit to stand trial. At the hearing, the only expert testimony presented was that of Dr. Markos, who stated that the defendant was fit to stand trial while on medication. Rosenthal testified that the defendant was withdrawn and uncooperative but that does not support a finding that the defendant was unfit to stand trial. Although the defendant testified that his name was not Steven Brown and the victim was not his father, the trial judge, who observed the defendant's demeanor, found that the defendant was oriented and there was no evidence presented that militated against his ability to observe, recollect, and relay occurrences. There is no reason for this court to discredit the trial judge's findings on the credibility of the witnesses in this case. Based on the record, the judge did not abuse his discretion in finding that the defendant was fit to stand trial.

## II

The defendant also argues that the prosecutor's alleged improper closing argument prejudiced him but he did not properly preserve the issue for review because he failed to object to most of the comments he now claims were improper and failed to raise the issue in his posttrial motion.

The failure to raise an objection at trial and in a post-trial motion results in a waiver of that issue on appeal unless it amounts to plain error. (*People v. Herrett* (1990), 137 Ill. 2d 195, 561 N.E.2d 1.) A reviewing court may consider an issue as plain error when the evidence at trial was closely balanced or when the error was so fundamental

that the defendant was denied a fair trial. (*Herrett*, 137 Ill. 2d 195, 561 N.E.2d 1.) Improper comment is plain error when it was either so inflammatory that the defendant could not have received a fair trial or so flagrant as to threaten a deterioration of the judicial process. *People v. Phillips* (1989), 127 Ill. 2d 499, 538 N.E.2d 500.

■ In this case, the evidence at trial was not closely balanced because the only evidence presented which addressed the defendant's guilt or innocence was his statement to the police. In that statement, the defendant admitted that he stabbed his father numerous times with a pair of scissors during an argument.

Also, the alleged error was not so fundamental that the defendant was denied a fair trial because none of the comments were inflammatory or flagrant. There is no merit in discussing each of the comments the defendant now claims was improper; we find it necessary to discuss only the comments quoted below.

The defendant claims that the prosecutor improperly commented on the fact that he did not testify with statements such as: "[W]hat you have to consider is what you heard from the witness stand, the evidence which you have to consider. *** The only evidence you have to consider, the only thing you heard is that the Defendant gave that statement. *** You have heard nothing to contradict —." The defendant relies on *People v. Wollenberg* (1967), 37 Ill. 2d 480, 229 N.E.2d 490, where the prosecutor stated that there was only one defendant on trial, named the witnesses for the State and the defense, and then noted, "No one else testified. Let's get that straight." (*Wollenberg*, 37 Ill. 2d at 487, 229 N.E.2d at 494.) The supreme court noted that the State may comment that its case was uncontradicted; however, it found that the comment was plain error because the underlying purpose and ultimate effect were to direct the jury's attention to the fact that the defendant did not testify. The statements in this case, unlike *Wollenberg*, served to inform the jury that it could only consider the evidence presented at trial rather than the arguments of counsel and emphasized the strength of the State's case. The purpose and effect of the statements did not call attention to the defendant's failure to testify.

The defendant also asserts that the prosecutor improperly bolstered the credibility of the State's witnesses when he stated: "Do you think the State's Attorney or the detective *** are [*sic*] going to get up here and lie, commit perjury and get up here and say that the Defendant gave a statement when, in fact, he didn't?" The defendant relies on *People v. Bitakis* (1972), 8 Ill. App. 3d 103, 289 N.E.2d 256, where the court found that a prosecutor may not give the jury his

opinion of the witness' veracity and cannot give the jury what amounts to his own testimony. *Bitakis* does not warrant a finding here that the comment was prejudicial because the prosecutor did not offer his opinion as to the credibility of the assistant State's Attorney or the detective. The prosecutor merely asked the jury a rhetorical question concerning their veracity. The comment did not improperly bolster the credibility of the State's witnesses and, therefore, it was not prejudicial.

The defendant further contends that the prosecutor told the jury to disregard a defense witness and to discredit defense counsel when he said: "You are not to consider what [the defendant's attorney] may argue. You have to consider the evidence and the evidence says that the Defendant admitted killing his father. *** Regarding the defense, what evidence the Defense did present, it presented Dr. Markos. What significance is that? Nothing." The defendant relies on *People v. Starks* (1983), 116 Ill. App. 3d 384, 451 N.E.2d 1298, where the court found that the prosecutor's assertions that the defendant's counsel engaged in trickery and misrepresentation were improper. The comment here, however, did not disparage the defendant's counsel as did the comments in *Starks* but, rather, referred to the fact that the jury should not consider closing arguments as evidence. Further, the comment that Dr. Markos' testimony was not significant was fair because a prosecutor may question the relevance or credibility of the defendant's case. See *Phillips*, 127 Ill. 2d 499, 538 N.E.2d 500.

In sum, after reviewing the prosecutor's arguments in the context in which they were made, we find that none of the comments that the defendant cites were clearly improper. Also, the jury was instructed that the arguments of counsel were not evidence. The comments were neither inflammatory nor flagrant, and therefore, there was no plain error. Further, because none of the comments were improper, there was no cumulative error. *Cf. Starks*, 116 Ill. App. 3d 384, 451 N.E.2d 1298.

### III

The defendant next argues that he was denied effective assistance of trial counsel because his attorneys did not file a motion to suppress his statement and because they did not object to the prosecutor's closing argument. This issue was waived because the defendant did not raise it in his post-trial motion. We will consider the issue to determine if plain error occurred.

Generally, to establish a claim of ineffective assistance of counsel, a defendant must show that the attorney's performance fell below an

objective standard of reasonableness and the defects were so serious that the defendant was denied a fair trial. (*Strickland v. Washington* (1984), 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052; *People v. Albanese* (1984), 104 Ill. 2d 504, 473 N.E.2d 1246.) The defendant must establish that there is a reasonable probability that but for the defects, the result would have been different. (*Strickland*, 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052; *Albanese*, 104 Ill. 2d 504, 473 N.E.2d 1246.) Although the test for ineffective assistance of counsel has two prongs, a reviewing court need not examine whether counsel's representation was deficient if it finds that there is no basis for sufficient prejudice. *Strickland*, 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052; *Albanese*, 104 Ill. 2d 504, 473 N.E.2d 1246.

■ In this case, there is no basis for a finding that the defendant was sufficiently prejudiced by the alleged ineffective assistance of his trial counsel. Although the defendant's attorneys did not file a motion to suppress, the defendant cannot show that if the motion was filed the result likely would have been different. Before the defendant gave his statement, he was read his *Miranda* rights and indicated that he understood them. Officer Costello testified that during the interview, the defendant was coherent and appeared to understand what he was saying. The assistant State's Attorney who was present when the defendant gave his statement stated that the defendant did not exhibit signs of mental illness. Unlike *People v. Nau* (1988), 167 Ill. App. 3d 338, 521 N.E.2d 177, which the defendant relies on, there was no evidence here that the defendant was hallucinating while he was being interviewed or that the defendant was insane at the time he waived his *Miranda* rights. Although Dr. Kaplan testified that the defendant was insane at the time of the offense, Dr. Stipes testified that he was sane. As a result, the question of whether the defendant's statement was voluntary was subject to the determination of which witnesses were credible. (See *People v. Graham* (1991), 214 Ill. App. 3d 798, 573 N.E.2d 1346 (the trial judge must determine the credibility of the witnesses in a motion to suppress).) Because the weight of the evidence showed that the defendant's statement was voluntary, it cannot be said that there was a reasonable probability that the defendant's motion to suppress would have been granted if it was filed.

The defendant also argues he was denied effective assistance of trial counsel because his attorneys failed to object to the prosecutor's closing argument. As discussed previously, the comments were not prejudicial and any objections to the comments would have been over-

ruled. As a result, the result would not have been different if the objections were made.

## IV

Lastly, the defendant argues that the trial judge abused his discretion when he sentenced the defendant to 32 years in the mental health unit.

If convicted of murder, a defendant may be sentenced to from 20 to 60 years in prison. (Ill. Rev. Stat. 1989, ch. 38, par. 1005—8—1(a)(1)(a).) Sentencing is within the discretion of the trial judge and a sentence will not be disturbed on review unless it was an abuse of discretion. *People v. Perruquet* (1977), 68 Ill. 2d 149, 368 N.E.2d 882.

■■ Here, the defendant claims that the trial judge imposed an excessive sentence because the defendant was not remorseful and was not regularly employed. The defendant argues that those factors cannot be held against him because they were the result of his mental illness. It is true that the judge referred to the defendant's lack of remorse and failure to hold a job in the sentencing hearing. However, in sentencing the defendant, the judge also recognized that the defendant was mentally ill, considered the arguments for mitigation and aggravation, and relied on the presentence report. The sentence of 32 years was not an abuse of discretion because it was well within the statutory limit, the murder was essentially unprovoked, and the victim was brutally stabbed 36 times.

Pursuant to *People v. Nicholls* (1978), 71 Ill. 2d 166, 374 N.E.2d 194, we grant the State's request to assess the sum of $50 against the defendant as costs for defending this appeal and pursuant to *People v. Agnew* (1985), 105 Ill. 2d 275, 473 N.E.2d 1319, we assess the sum of $25 as costs for oral argument.

Affirmed.

JIGANTI, P.J., and CAHILL, J., concur.